Argued January 6, affirmed February 13, 1969

HEER, *Appellant, v.* DEPARTMENT OF
MOTOR VEHICLES, *Respondent,*
GRAYSON, *Appellant, v.* DEPARTMENT OF
MOTOR VEHICLES, *Respondent.*
450 P. 2d 533

*Dan W. Poling*, Newport, argued the cause and filed the briefs for appellants.

*John S. Marandas*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LANGTRY, Justices.

LANGTRY, J. (Pro Tempore).

These consolidated proceedings seek to test the constitutionality of the Implied Consent Law, Oregon Laws 1965, ch 574 (ORS 482.540 through 482.580 and 483.634 through 483.646).

Lawrence Delmar Heer and Otis Paul Grayson each were arrested in the city of Newport for driving while under the influence of intoxicating liquor in violation of ORS 483.992. They were charged in the municipal court with violation of the state law. In previous consolidated cases they challenged the authority of that municipal court to hear the charge in its capacity as an ex officio justice of the peace court. We rejected this challenge in *Grayson; Heer v. State,* 249 Or 92, 436 P2d 261 (1968).

At the police station, after their arrests, each defendant was requested by one of the arresting police officers to take a breath test for determination of alcoholic content of blood as provided in ORS 483.634, and each refused.

Pursuant to the statute the refusals were communicated to the Department of Motor Vehicles, hearings were requested by petitioners and held. The operator's license of each was suspended. Each then petitioned the circuit court for a de novo hearing as provided by ORS 482.560.

Their amended petitions in circuit court alleged the action taken by the department was "erroneous, unconstitutional and contrary to law" in that: (1) the city could not prosecute for violation of the state law (it was this question that was disposed of in the previous appeal); (2) the hearing procedure of the Implied Consent Law violates the Fifth Amendment of the U. S. Constitution in that it requires the defendants, who still faced prosecution for the criminal

charge, to go forward with evidence which in turn might tend to criminate them; (3) that the proceeding under the Implied Consent Law violates "Due Process Clauses of the Fifth and Fourteenth Amendments in that * * * the Department of Motor Vehicles is not a Court or Tribunal of Competent Jurisdiction;" (4) "it violates equal protection;" (5) the officer is vested with "legislative discretion" in that he may arbitrarily decide of whom he will request the test.

The Department of Motor Vehicles answered denying the above allegations.

Petitioners' attorney orally stated in one trial, "* * * I would demur to the taking of any testimony * * *" and in the other, which was held the following day, "* * * petitioner * * * demurs to these proceedings * * *." There was much more than these isolated statements of petitioners' counsel in the colloquy between the court and both counsel about how to proceed, but apparently petitioners' counsel was trying to present to the court the issues which were already drawn and presented by the pleadings. Petitioners simply were questioning whether there was or could be valid action taken in a proceeding under the Implied Consent Law, because they claim it contravenes the Oregon and U. S. Constitutions. A simple refusal to proceed with the evidence under the state of the pleadings would have sufficed.

The trial court heard full evidence, over objection in one case where the defendant was present but not in the other because that defendant was not present, and upheld in each the action of the hearing officer. The effect of the trial court's order in each case was to reject petitioners' claims.

This appears to be the first appellate test of the Implied Consent Law in Oregon. In plan and content

the act is essentially the same as similar acts in other states. Attacks upon such laws on constitutional grounds like those urged here appear to have been rejected in some ten of those states. *Gottschalk v. Sueppel,* 258 Iowa 1173, 140 NW2d 866 (1966); *Lira v. Billings,* 196 Kan 726, 414 P2d 13 (1966); *Marbut v. Motor Vehicle Department,* 194 Kan 620, 400 P2d 982 (1965); *Lee v. State,* 187 Kan 566, 358 P2d 765 (1961); *Blydenburg v. David,* 413 SW2d 284 (Mo 1967); *Prucha v. Department of Motor Vehicles,* 172 Neb 415, 110 NW2d 75, 88 ALR2d 1055 (1961); *State v. Kenderski,* 99 NJ Super 224, 239 A2d 249 (1968); *Finocchairo v. Kelly,* 11 NY2d 58, 226 NYS2d 403, 181 NE2d 427, cert. den., 370 US 912, 82 S Ct 1259, 8 L ed 2d 405 (1962); *Anderson v. Macduff,* 208 Misc 271, 143 NYS2d 257 (Sup Ct 1955); *Schutt v. Macduff,* 205 Misc 43, 127 NYS2d 116 (Sup Ct 1954); *Timm v. State,* 110 NW2d 359 (ND 1961); *Chmelka v. Smith,* 81 SD 40, 130 NW2d 423 (1964); *State v. Muzzy,* 124 Vt 222, 202 A2d 267 (1964); *Walton v. City of Roanoke,* 204 Va 678, 133 SE2d 315 (1963). These and other cases are collected in an extensive Annotation in 88 ALR2d 1064, and ALR2d Later Case Service.

In no state does such a law essentially the same as that adopted in Oregon appear to have been stricken down on constitutional grounds.

Without detailing provisions of the act, it provides that a driver on a highway of the state shall be deemed to have given consent to a chemical test of his breath to determine the alcoholic content of his blood. The prerequisite steps that result in loss of operator's license are these: (1) if he is arrested for driving in violation of ORS 483.992 (driving while under the influence of intoxicating liquor); (2) the police of-

ficer has reasonable grounds to believe the person arrested was driving while intoxicated; (3) a test shall be administered upon the request of the police officer; (4) if such arrested person refuses the request; (5) has been informed of the consequence of refusal, which is loss of operator's license for 90 days; and (6) his rights, which include a reasonable opportunity of having a test of blood, breath, urine or saliva made by qualified medical personnel of his own choosing, no test may be given, but he will lose his operator's license for 90 days through an administrative process. ORS 483.634. The police officer is required to prepare a sworn report setting forth the occurrence of all six of the procedural requirements above related, and file it with the Department of Motor Vehicles, which then has the duty of suspending the operator's license. The driver may request a hearing, which, if requested, is before a department hearing officer. The hearing is limited to ascertainment that the same six procedural requirements have been met. If these are proved and the hearing officer orders the suspension the driver may appeal by filing a petition in the circuit court. "* * * The trial in the circuit court shall be de novo and the appellant shall have the right to a jury as provided in criminal actions." ORS 482.560.

Although the pleadings and petitioners' brief state the issues to be decided in this appeal somewhat indefinitely, the allegations of paragraph IV of the amended petitions, put in issue by the answers, challenge procedure which conformed with the statute in these particulars: (1) that it violated the Fifth Amendment of the United States Constitution because it required petitioner to incriminate himself; (2) that the procedure violated requirements of due process of law; (3) that it violated equal protection requirements

of state and federal constitutions; (4) that it violated the separation of powers of the state constitution in that it confers legislative discretion on the police officer who decides those who will be requested to take the test.

These challenges will be considered in the above order.

■ (a) The objection on self-incrimination grounds frequently has been made in cases challenging the Implied Consent Law in other states. In each instance it has been rejected, usually under the theory that by driving upon the highways of the state the driver accepts the law as it is. He thus consents to the taking of a breathalyzer test or some other test designed to determine the amount of alcohol in his blood, and by this consent he waives his constitutional privilege against self-incrimination. This was the reasoning of *Lee v. State; Marbut v. Motor Vehicle Department; Walton v. City of Roanoke; Prucha v. Department of Motor Vehicles;* and *Blydenburg v. David,* all supra.

In *Schutt v. Macduff* and *Lee v. State,* supra, the court also said the accused is given the choice of waiving his privilege against self-incrimination or of losing the privilege of driving. The opinions frequently point out that the criminal charge and the proceedings for loss of license by reason of refusal to take the test are separate and distinct—the latter administrative and civil in character. *Prucha v. Department of Motor Vehicles; Anderson v. Macduff; State v. Muzzy; Gottschalk v. Sueppel; Marbut v. Motor Vehicle Department,* supra; and *Strelecki v. Coan,* 97 NJ Super 279, 235 A2d 37 (1967); *Beare v. Smith,* 140 NW2d 603 (SD 1966).

In *Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L ed 2d 908 (1966), the United States Su-

preme Court, in a case where blood was taken from a driver after he was involved in an accident in a state which did not have the Implied Consent Law, held the driver's privilege against self-incrimination had not been violated because that privilege relates only to convicting a person with aid of words from his own mouth. The same theory was followed in *State v. Kenderski,* supra, where the Implied Consent Law was attacked on the theory that it required the petitioner to incriminate himself. There the court said that *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L ed 2d 694, 10 ALR3d 974 (1966), does not apply to breathalyzer evidence because *Miranda* is based on the privilege against self-incrimination. "* * * A breatholizer is unrelated to a communication by the subject. Rather, it is a search of the person and therefore subject only to the question of reasonableness [citing cases]." *State v. Kenderski,* 99 NJ Super at 229.

With reference to the Fifth Amendment challenge we rest our decision on *Schmerber* and *Kenderski,* supra, not upon the theory of waiver or consent. We see no need in this case to discuss whether a person's driving of a vehicle on a public highway is based upon privilege or right.

■ Petitioners' counsel in the instant case argues that because the petitioner must go forward with the evidence on his petition in circuit court after the administrative agency has made its order against him, he is forced to incriminate himself if his criminal charge for drunken driving is still pending. The simple answer to this contention is that there is nothing in the law or the orders which requires him to go ahead with his petition.

■ (b) Petitioners claim that procedure under the

Implied Consent Law violates requirements of due process of law. This contention has also been made frequently against the law in other states. In *Gottschalk v. Sueppel,* supra, answering this challenge the court simply stated that due process consists of notice and a chance to be heard, which is included in the process under the Implied Consent Law as we have it in Oregon. *Blydenburg v. David,* supra, held that due process requirements are satisfied if the law has a provision in it for an administrative hearing subject to judicial review. This, too, is provided by the Oregon statute. Other cases which have approved the Implied Consent Law against this particular challenge are *Prucha v. Department of Motor Vehicles* and *Lee v. State,* supra.

■ (c) The equal protection challenge was raised in *Schutt v. Macduff,* supra, and there the court said:

> "The court, without hesitation, rejects the claim that the statute operates to deprive the petitioner of the equal protection of the laws guaranteed by our Federal and State Constitutions. * * * The statute in question does affect alike all persons similarly situated, i.e., persons licensed to operate motor vehicles upon the highways * * *." 127 NYS2d at 125.

■ (d) The petitioners assert that the separation-of-powers provision of the Oregon Constitution is violated, specifically in that the police officer is given discretion as to whom he will request to take the test. This challenge overlooks the fact that the police officer is given a guideline of reasonableness. Such a test shall be administered "upon the request of a police officer having reasonable grounds to believe the person arrested * * * [was driving while intoxicated]." ORS 483.634. Furthermore, he cannot make

the request until after he has made the arrest. If the officer made the arrest for drunken driving without having probable cause, it would be an illegal arrest. Thus, the prerequisite of arrest is a guideline in itself. A similar challenge was made in *Lira v. Billings,* supra, but there the part of the procedure the petitioner claimed was a delegation of legislative authority was the administrative and appellate procedure. The court said, "* * * there is a standard or guideline plainly present in the statute—*reasonableness* * * *."

■ Petitioners' counsel, in his reply brief, asserted that the "Assignment of Error is of necessity twofold; that is, that (1) the Implied Consent Law is unconstitutional and (2) if it is constitutional it was a gross abuse of discretion * * *" to require the petitioners to proceed first in the trial de novo, when the reverse was their position in the administrative hearing. The same complaint was made by the petitioner in *Lira v. Billings* and the Kansas Supreme Court held the statute there, procedurally identical with the Oregon statute, requires the petitioner, as the one seeking affirmative relief, to carry the burden of proof. We agree with this analysis, and it follows that if petitioner has the burden he must initiate the evidence. *Buda v. Fulton,* 157 NW2d 336 (Iowa 1968).

The questions which have been raised by the petitioners, as shown by the foregoing discussion, all have been raised and disposed of in uniform holdings of the supreme courts of other states having statutes almost identical with the Implied Consent Law in Oregon. We agree with the results in those cases.

The orders of the trial court are affirmed.