Argued May 26, affirmed June 17, 1971

WARNER, *Appellant, v.* MOTOR VEHICLES
DIVISION, *Respondent.*

485 P2d 1248

*Charles D. Burt,* Salem, argued the cause for appellant. With him on the brief were Brown and Burt, Salem.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

The Motor Vehicles Division suspended petitioner's operator's license for her refusal to submit to a chemical test of her breath pursuant to ORS 483.634. She appealed. ORS 482.560. The jury found against her, and the court entered judgment accordingly. Petitioner now appeals to this court.

On March 2, 1970, at approximately 12:45 a.m., the petitioner, Warner, was involved in a one-car accident. The arresting officer arrived at the scene at approximately 12:51 a.m. and requested Warner to perform some tests. The officer concluded from these tests that she was under the influence of intoxicating liquor. The officer thereupon read petitioner the *Miranda*[1] warnings and placed her under arrest. The officer testified that in his opinion she did understand what he was telling her.

Warner was taken to the police station. There she was asked if she would take a breath test and was informed of her rights and the consequences of a re-

---

[1] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

fusal. She appeared uncertain and stated that she wanted to talk to an attorney first. At her request an officer thereupon dialed the number of her attorney and petitioner talked to him.

Once the phone call was completed, Officer Smith read the breathalyzer form to petitioner verbatim and informed her of the consequences of her refusal. Thereupon she was asked if she would take the test. She refused to take any test whatsoever. She was then asked to and did sign the breathalyzer refusal form. When her attorney arrived at the police station some 20 to 25 minutes after her phone call, petitioner was bailed out. No further request to take a breath test was made of petitioner, nor did she or her attorney request one.

■ Petitioner contends the court erred in holding that as a matter of law, at the time she was asked by the officer to take the breathalyzer test she was "capable of making a rational decision."

Her own attorney called himself as a witness on her behalf. On direct examination after stating that Mrs. Warner had called him from the jail, the following occurred:

"Q   What did she say?

"A   Mrs. Warner in effect told me that she had been in a car accident and that she was in jail and under arrest or she thought she was under arrest and would I get her out.

"Q   What did you tell her?

"A   I told her I would come down immediately under these circumstances and that I would bring a bail bondsman with me and not to do or say anything further until I got there and talked to her.

"*   *   *   *   *

"Q How long between the time that you received the call and you arrived at the jail?

"A I would say 20 to 25 minutes from the time I was called I was there.

"Q All right. Did you see Mrs. Warner immediately upon arriving at the jail?

"A Yes.

"Q How did she appear to you, physically?

"A Mrs. Warner was extremely upset and nervous. She appeared to have some slight injuries to her hand. I also could notice that in other respects she appeared fairly normal. Her eyes seemed to be normal. I had known her then for over a year as a client. We had a discussion privately for probably ten minutes and then I stayed with her during the remainder of the procedure until she was released."

Mrs. Warner confirmed her attorney's statements in her testimony. The record is undisputed that she signed the form setting forth the Consequences and Rights of Refusal of Breath Test. She did not deny signing it, stating only that she did not recall.

In *Garcia v. Dept. of Motor Vehicles*, 253 Or 505, 511, 456 P2d 85 (1969), the Supreme Court said:

"Finally, the assertion that a driver can be too intoxicated to understand the options open to him and thus cannot be properly subject to penalty for refusing to take the test presents a question that need not detain us. We hold that the Department of Motor Vehicles need not prove a specific intent on the part of the driver who refuses the test. The department makes out a defense to the petition upon proof that the test was offered according to the statutory instructions and that after all preliminary statutory requirements were met the test was refused. We doubt that the legislative purpose of the statutory scheme would be served by per-

mitting an operator to retain his driving privileges solely because, when he refused the breath test, he was too drunk to make an intelligent decision in accepting or refusing the test."

The challenged ruling was correct.

■ The petitioner contends next that the court erred in holding that she was properly informed of her rights concerning and the consequences of failing to take the breath test. All of the evidence is that she was. She testified only that she did not recall. Thus there was no evidence on which the jury could find otherwise. The contention is without merit.

■ Finally, petitioner contends that the act is unconstitutional because it coercively denies to petitioner the right to counsel. *Garcia v. Dept. of Motor Vehicles,* supra; *Heer v. Dept. of Motor Vehicles,* 252 Or 455, 450 P2d 533 (1969), and *Burbage v. Dept. of Motor Vehicles,* 252 Or 486, 450 P2d 775 (1969), hold to the contrary. The contention is without merit.

The jury here in response to the specific interrogatories submitted held the police officer had "reasonable grounds at the time of the request to believe the petitioner was driving while intoxicated" and that "the petitioner refuse[d] to take the breath test."

There was no error. The judgment is affirmed.