Argued and submitted April 6, decisions of the trial court and Court of Appeals affirmed June 7, 1988

In the Matter of the Suspension of
the Driving Privileges of

POOLER,
*Respondent on Review,*

*v.*

MOTOR VEHICLES DIVISION,
*Petitioner on Review.*

(TC No. 85-547-CV; CA A41560; SC S34832)

755 P2d 701

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition for review were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Oral argument waived by respondent on review.

CARSON, J.

## CARSON, J.

This case arises from the suspension of a driver license following the driver's failure of a chemical breath test. Two questions are presented: (1) Whether the scope of the administrative hearing included determination of the validity of the arrest; and (2) whether the driver was validly arrested. Because there is no record before us of the findings made below, the underlying and apparently undisputed facts are taken from the briefs and memoranda of the parties:

On June 29, 1985, at approximately 2:40 a.m., respondent's vehicle approached a state police-conducted sobriety roadblock. Respondent made a U-turn before reaching the roadblock.[1] A state police officer had been assigned to stop vehicles appearing to avoid the roadblock. The officer stopped respondent's vehicle and noted an odor of alcohol. The officer asked respondent to perform field sobriety tests. After performing the tests, respondent was arrested.

Subsequently, respondent was asked to take a chemical breath test.[2] The test disclosed a blood alcohol content of 0.15 percent.[3] After receiving a report of respondent's test results, the Motor Vehicles Division notified respondent that his driving privileges were being suspended. Respondent requested an administrative hearing to challenge the suspension; the hearings officer upheld the suspension. Upon review in the circuit court, however, that court ordered the suspension vacated. The state appealed to the Court of Appeals, which affirmed the decision of the circuit court and concluded that: (1) A valid arrest is required to request a breath test and to suspend driving privileges based upon a test result; and (2) respondent was invalidly stopped and arrested. *Pooler v. MVD*, 88 Or App 475, 746 P2d 716 (1987). We affirm for the reasons set forth below.

---

[1] It is not contended that the U-turn was illegal.

[2] Although the Court of Appeals asserted to the contrary, respondent apparently was arrested *before* taking the breath test.

[3] Under *former* ORS 487.540 (now ORS 813.010), a person committed the offense of driving while under the influence of intoxicants if his or her blood alcohol level exceeded 0.08 percent.

## I. Scope of the Administrative Hearing

■      First, we turn to whether the scope of the administrative hearing included a determination of the validity of respondent's arrest. By "valid arrest" we mean an arrest supported by probable cause.

Under *former* ORS 487.805(1),[4] a person operating a motor vehicle on the state's highways was deemed to consent to a chemical breath test if arrested for driving while under the influence of intoxicants (DUII). If the person failed the test and had his or her driving privileges suspended, he or she could ask for an administrative hearing. *Former* ORS 482.541(2).[5] The scope of the hearing was limited to determining whether the requirements for a valid suspension under *former* ORS 487.805 had been met. *Former* ORS 482.541(4). Among those requirements was whether "[t]he person, at the time the person was requested to submit to a test under ORS 487.805, was *under arrest* for driving while under the influence of intoxicants." *Former* ORS 482.541(4)(a). (Emphasis added.)

In *State v. Ratliff*, 304 Or 254, 256 n 2, 744 P2d 247 (1987), we left open the question of whether hearings officers might consider the validity of arrests in suspension hearings. Here, the state contends that the scope of the hearing was limited to determining whether respondent simply was "under arrest" when asked to take the breath test. The state argues that to allow inquiry into the validity of the arrest would unduly complicate the hearing, tax the adjudicative skills of the hearings officer, and implicate the collateral estoppel concerns at the heart of *State v. Ratliff, supra.* According to the state, the determination that respondent was "under arrest," validly or not, ends the inquiry because respondent then could be requested to take the chemical breath test.

The position of the state is unpersuasive. In an earlier case, this court concluded that the guideline of a *legal* arrest was a control over a police officer's discretion in requesting a chemical breath test. *Heer v. Dept. of Motor Vehicles,* 252 Or 455, 450 P2d 533 (1969). Implicit was the idea that an *illegal*

---

[4] Now ORS 813.100.

[5] Now ORS 813.410.

arrest would not place suitable controls over the officer's discretion and thus that the request might run afoul of separation-of-powers provisions in the state constitution. *See* 252 Or at 463-64. The *Heer* court apparently assumed that the breath test request only would be made after a legal arrest. *Id.*

Similarly, the Court of Appeals concluded eight years ago that a valid arrest was prerequisite to a lawful request to take a chemical breath test. *Brinkley v. Motor Vehicles Division,* 47 Or App 25, 29, 613 P2d 1071 (1980). Again, there was an idea implicit in that conclusion: That a valid arrest is required to suspend for failing the test. Together, the *Heer* and *Brinkley* decisions favor the view that the arrest which is prerequisite to a lawful suspension under the implied consent law must be a valid arrest. Without a valid arrest, there can be no request to take a breath test which may lead to a lawful suspension.

Other considerations bolster this view. Although *former* ORS 482.541 does not, on its face, address the issue, we conclude that the legislature must have intended a valid arrest when it used the term "under arrest" in that statute. Were that not so, police officers would be free to stop drivers at random, without probable cause or reasonable suspicion, hoping to identify the occasional DUII driver. Such random activities by the police would be unconstitutional. *See State v. Boyanovsky,* 304 Or 131, 743 P2d 711 (1987); *State v. Anderson,* 304 Or 139, 743 P2d 715 (1987). Because we do not attribute to the legislature the intent to sanction unconstitutional procedures, *see Molodyh v. Truck Insurance Exchange,* 304 Or 290, 299, 744 P2d 992 (1987), we conclude that the term "under arrest" in *former* ORS 482.541 meant a valid arrest.

If the arrest must be valid, it follows that the scope of the administrative hearing before the hearings officer included the question of the validity of the arrest. Upon respondent's request, the hearings officer was required under *former* ORS 482.541 to determine whether respondent validly was under arrest for DUII when asked to take the chemical breath test. In so concluding, we recognize the added burden placed upon the hearings officer. That burden, however, is not significantly more far-reaching than that already borne in these administrative proceedings. *See Leabo v. SER/Motor Vehicles Division,* 46 Or App 55, 620 P2d 317 (1980) (whether

police officer had reasonable grounds to believe driver was DUII included within scope of suspension hearing).

Moreover, we note that the state has misapprehended the rationale of our opinion in *State v. Ratliff, supra.* Although we stated in that opinion that license suspension proceedings were intended to be expeditious and informal, we did not purport to exclude from those proceedings matters which are properly before the hearings officer. *See* 304 Or at 259-60. The validity of the arrest for DUII is such a matter.

## II. Validity of the Arrest

Having concluded that the hearings officer properly might consider the validity of the arrest, we turn to whether respondent's arrest was valid. If the arrest were invalid, respondent lawfully could not be requested to take the breath test and thus his suspension may not stand.

Without discussion, the Court of Appeals concluded that the arrest in this case was invalid because the stop was invalid. *Pooler v. MVD, supra,* 88 Or App at 478-79. That approach, however, begs the question. An arrest is not invalid simply *because* a stop is somehow unlawful; an arrest is invalid if it follows as a consequence of and depends upon the unlawful stop. The intermediate step, or connecting link, between stop and arrest is the probable cause for the arrest. A stop may produce the evidence which forms the basis for probable cause for an arrest. Accordingly, an unlawful stop may "invalidate" an ensuing arrest, but only through the exclusion of evidence garnered from the stop.

*State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977), is a case in point. There, ORS 131.615, the same statute as was relied upon below to justify the stop in this case, provided that a police officer "reasonably [suspect] that a person has committed a crime" before initiating a stop. The police officer in *Valdez,* however, stopped the defendant without reasonable suspicion and arrested him. This court invoked "the sanction of evidentiary exclusion" for the statutory violation. 277 Or at 629. According to the principle announced in *State v. Valdez,* if the stop in this case were unlawful, evidence obtained as a result of the stop should be excluded.

Our task is considerably lightened because the state concedes that the stop was unlawful. The evidence garnered

from the stop must be excluded. With that evidence excluded, there was insufficient evidence upon which to predicate probable cause to arrest respondent for DUII. Because respondent thus was not validly under arrest, a prerequisite to a lawful request to take a breath test was lacking and respondent's suspension cannot stand.

The decisions of the trial court and the Court of Appeals are affirmed.