STATE OF OREGON,
*Respondent,*

*v.*

TIMOTHY PAUL WILLIAMSON,
*Appellant.*

(86-1386-C-1; CA A42019)

759 P2d 288

John P. Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

**BUTTLER, P. J.**

Defendant seeks reversal of his conviction for manufacture of a controlled substance. ORS 475.992. The sole issue is whether the trial court erred in denying defendant's motion to suppress. We reverse.

Defendant was driving an open bed pickup truck shortly before noon on April 25, 1986, when he was stopped by police officers Rupp and Becker as part of a roadblock to check licenses and registrations and to issue citations to drivers who did not have valid documentation. Becker asked for defendant's license and registration, which defendant produced, explaining that the truck was registered to his wife, who had a different last name. Becker recognized defendant's name as having come up in a drug investigation. As defendant reached for some other papers in the glove compartment, Becker stepped three feet toward the rear of the truck and saw in its open bed three closed unsealed cardboard boxes, a metal tool box, a lawn mower and lawn clippings. Becker leaned over the boxes and smelled what he believed to be marijuana. He then ordered defendant to move the truck to a nearby parking lot.

After defendant had done so, Becker told him that he had smelled marijuana in the boxes, gave defendant *Miranda* warnings and advised him of his right to refuse to consent to a search. Becker then asked defendant for permission to search the boxes. Defendant replied that "he didn't want him to and that he just wanted to leave." Becker asked Rupp to sniff the boxes; Rupp did so and said that he also smelled what he believed to be marijuana. Becker told defendant that, if he did not consent to a search, he would not be allowed to leave until the officer attempted to get a search warrant. Defendant told the officer that he needed to pick up his child from a day care center and asked what his options were. The officer testified:

> "I informed him of what I felt that it was by odor, and I told him that, you know, based upon my beliefs that we could detain the vehicle until such time that I could contact the District Attorney's office to attempt to obtain a search warrant for the, for the vehicle. The other alternative was a consent search, and I told him that the decision, you know, would be left up to him, and he says, 'Well, how much,' he says, you know, 'What can happen to me? What, what can be involved?'

And I told him that I did not know how much marijuana that he had, that if he had a large amount of marijuana that it would be considered a felony, and he could be incarcerated for that, being its a felony. I says, 'But I don't know how much marijuana that you've got.' I says, "I feel that you have some marijuana there because I can smell the odor coming from the box.' And he thought about it, and basically he said, 'Well, I guess I'll try to take the best thing that I can, that I can get.' And he agreed to a consent search, and we went through the consent search form and he signed that."

When defendant agreed to sign the consent form, he said, almost simultaneously, "There's not much in there." Becker testified that it appeared to him that for much of the conversation defendant was attempting to negotiate for a citation instead of an arrest. Approximately nine minutes elapsed between the initial contact and defendant's consent to the search. The search of the cardboard boxes and the tool box revealed 37 marijuana plants, four to six inches tall, in separate pots.

The state acknowledges that the police did not have any particularized suspicion that defendant had violated any criminal laws and concedes that the stop was illegal. *See State v. Boyanovsky,* 304 Or 131, 743 P2d 711 (1987). However, the state argues that the seized contraband is admissible, nevertheless, because (1) one of the officers had detected the presence of marijuana by leaning over and smelling a box in the back of defendant's pickup truck and (2) defendant ultimately consented to the search. It, and the dissent, rely on *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981).[1]

However, the most recent pronouncement of the Supreme Court is *Pooler v. MVD,* 306 Or 47, 747 P2d 376 (1988). The question there was whether the police could, after an invalid stop at a roadblock, base their decision to arrest Pooler on evidence obtained as a consequence of the invalid stop. The court said:

"An arrest is not invalid simply *because* a stop is somehow

---

[1] *Kennedy* appears to have been decided on the basis of cases decided under the federal constitution, without an independent analysis under the Oregon Constitution. *See State v. Caraher,* 293 Or 741, 653 P2d 942 (1982). In any event, the defendant in *Kennedy,* without having been asked to consent to a search, volunteered that the officers could search his briefcase. That consent was not the result of any evidence that the officers garnered from the stop, if there was one.

unlawful; an arrest is invalid if it follows as a consequence of and depends upon the unlawful stop. The intermediate step, or connecting link, between stop and arrest is the probable cause for the arrest. A stop may produce the evidence which forms the basis for probable cause for an arrest. Accordingly, an unlawful stop may 'invalidate' an ensuing arrest, but only through the exclusion of evidence garnered from the stop.

"*State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977), is a case in point. There, ORS 131.615, the same statute as was relied upon below to justify the stop in this case, provided that a police officer 'reasonably [suspect] [*sic*] that a person has committed a crime' before initiating a stop. The police officer in *Valdez,* however, stopped the defendant without reasonable suspicion and arrested him. This court invoked 'the sanction of evidentiary exclusion' for the statutory violation. 277 Or at 629. According to the principle announced in *State v. Valdez,* if the stop in this case were unlawful, evidence obtained as a result of the stop should be excluded.

"Our task is considerably lightened because the state concedes that the stop was unlawful. The evidence garnered from the stop must be excluded. With that evidence excluded, there was insufficient evidence upon which to predicate probable cause to arrest respondent for DUII." *Pooler v. MVD,* 306 Or at 52. (Emphasis in original.)

The same rule applies here. In *Pooler,* as here, the defendant was illegally stopped at a roadblock. After the stop, the officer smelled alcohol on the defendant's breath and, after conducting field sobriety tests, arrested the defendant. The court held that the arrest was invalid, because it depended on evidence garnered as a result of the illegal stop. Here, defendant's consent was obtained by the exploitation of evidence garnered from the illegal stop. Without defendant's consent, the officers could not search the truck without a warrant. The motion to suppress should have been granted.

Reversed and remanded.

**ROSSMAN, J.,** dissenting.

Despite the majority's breathless incantation of *Pooler v. MVD,* 306 Or 47, 755 P2d 701 (1988), it commits the very same error *Pooler* attacked. It is also inconsistent with other precedent. Accordingly, I dissent.

In *Pooler,* the Supreme Court stated:

"Without discussion, the Court of Appeals concluded that the arrest in this case was invalid because the stop was invalid. *Pooler v. MVD, supra,* 88 Or App [475] at 478-79[, 746 P2d 716 (1987)]. That approach, however, begs the question. *An arrest is not invalid simply because a stop is somehow unlawful;* an arrest is invalid if it follows as a consequence of and depends upon the unlawful stop. The intermediate step, or connecting link, between stop and arrest is the probable cause for the arrest. A stop may produce the evidence which forms the basis for probable cause for an arrest. Accordingly, an unlawful stop may 'invalidate' an ensuing arrest, but only through the exclusion of evidence garnered from the stop." *Pooler v. MVD, supra,* 306 Or at 52. (Emphasis supplied.)

Similarly, a search is not invalid "simply because" the prior stop was invalid. *Pooler* and earlier cases require that we look at whether intervening circumstances, such as voluntary consent, exist which would make the illegality of the initial stop irrelevant. Since consent is the intervening circumstance here, in order to supress evidence obtained as a result of that consent we would have to find that the consent was not voluntary. The reasoning of the majority leads to the conclusion that if, but for an improper stop, the conversation in which a defendant gave consent would not have occurred, the voluntariness of that consent is irrelevant. That is inconsistent with prior cases.

The majority's suggestion that *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981), is no longer viable is without merit. *Pooler* did not overrule cases concerning consent searches; that case has nothing to do with consent. All it says is that we must analyze the causal relationship between an illegal stop and a subsequent arrest to see whether the causal chain between stop and arrest is broken; if so, the arrest is valid. More generally, *Pooler* admonishes us to avoid conclusory analysis and proceed through all the steps in the causal chain after an illegal stop. 306 Or at 52.

Despite the fact that *Kennedy* cited federal caselaw, *see State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), *Kennedy* remains the leading case on consent searches. *See State v. Penney,* 87 Or App 357, 742 P2d 660 (1987); *State v. Glenn,* 83 Or App 650, 732 P2d 946 (1987); *State v. Smith,* 73 Or App 287, 698 P2d 973 (1985); *State v. Earls,* 69 Or App 75, 683 P2d 1387, *rev den* 297 Or 824 (1984); *State v. Hageman,* 59 Or App

96, 650 P2d 175 (1982). *See also State v. Wolfe,* 295 Or 567, 669 P2d 320 (1983).

Turning to the issue of consent, and our case law, the historical facts as found by the trial court demonstrate that defendant's consent here was voluntary and that the search was therefore valid. No coercive atmosphere was present. Defendant was stopped by the side of the road, in daytime, by two officers. He received *Miranda* warnings and was advised of his right not to consent to the search. The entire conversation between him and Becker appears to have taken place while defendant was seated in his truck. Defendant's attempt to use the officer's desire to search the boxes as leverage to negotiate a citation instead of an arrest is further evidence that he was aware that he need not consent to the search. He was given the choice between the certain delay of waiting for a warrant or consenting to the search and perhaps being sent on his way. Defendant made the latter choice; his choice was apparently based on what was most convenient for him. Aside from the stop itself, there is no evidence of coercion involved. Under the totality of the circumstances, I would hold that the state has met its burden of proving that defendant's consent to the search was voluntary. *See State v. Kennedy, supra; State v. Earls, supra.* We should affirm the trial court.