Argued and submitted January 31, the decision of the Court of Appeals affirmed, the judgment of the circuit court reversed and remanded to the circuit court April 18, 1989

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## TIMOTHY PAUL WILLIAMSON,
*Respondent on Review.*

(TC 86-1386-C-1; CA A42019; SC S35681)

772 P2d 404

Rives Kistler, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Diane Alessi, Deputy Public Defender, Salem, argued the cause for respondent on review.

LINDE, J.

## LINDE, J.

Defendant was convicted of manufacturing a controlled substance, ORS 475.992, after the trial court declined to suppress evidence found in his pickup truck. Police officers found the evidence, marijuana plants in closed boxes, after they unlawfully stopped defendant's vehicle at a roadblock and defendant acquiesced in a search of the boxes rather than wait for one of the officers to obtain a search warrant. The Court of Appeals held that the evidence should have been suppressed and remanded the case to the circuit court. *State v. Williamson,* 92 Or App 426, 759 P2d 288 (1988). Having allowed the state's petition for review, we affirm the decision of the Court of Appeals.

We briefly summarize the facts set out in the court's opinion. Officers Rupp and Becker stopped defendant's open-bed pickup truck at a police roadblock to check licenses and vehicle registrations. Recognizing defendant's name from a drug investigation, Becker stepped toward the rear of the truck, leaned over the truck bed, and smelled what he believed to be marijuana. After directing defendant to park in a nearby lot, Becker told defendant that he had smelled marijuana in the boxes, gave defendant *Miranda* warnings, and advised him of his right to refuse consent to a search. Becker then asked for permission to search the boxes. Defendant said that he did not want the officer to search, that he wanted to leave. Becker asked Rupp to sniff the boxes, and Rupp also said that he smelled marijuana. Becker said he would detain the vehicle until he could contact the district attorney's office to seek a search warrant, unless defendant consented to a search; the decision was up to defendant. After some discussion of the possible consequences of finding marijuana, defendant agreed to the search and signed a consent form. The officers found 37 small marijuana plants in the boxes.

The state concedes that the roadblock stop was unlawful under *Nelson v. Lane County,* 304 Or 97, 743 P2d 692 (1987), and *State v. Boyanovsky,* 304 Or 131, 743 P2d 711 (1987).[1] In holding that evidence resulting from the unlawful

---

[1] Those cases involved sobriety checkpoints clearly aimed at criminal law enforcement. We need not decide whether the license and registration checks in the present case might be sustained on less than probable cause as inspections limited to administrative sanctions, had they been designed as such; evidence of an offense unrelated to

stop should be suppressed, the Court of Appeals relied on *Pooler v. MVD,* 306 Or 47, 755 P2d 701 (1988). The state and a dissenting judge maintained that the evidence nevertheless was admissible because defendant's consent to the search was voluntary, citing *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981).

The present case differs from each of these cases. At stake in *Pooler* was the administrative suspension of a driver's license after an arrested driver failed a chemical breath test demanded by the arresting police officer. The governing statute applied only to tests conducted while the driver was "under arrest for driving under the influence of intoxicants," *former* ORS 482.541(4), and the issue was whether the validity of the arrest was vitiated if the officer found probable cause for the arrest only when he made the unauthorized stop. This court held that the arrest was invalid because, once the evidence garnered from the unlawful stop was excluded, there was no probable cause to make the arrest on which the statute hinged suspension of the driver's license. The present case does not involve the validity of an arrest; defendant does not claim that he was arrested before the officers found marijuana in his truck. The analogy with *Pooler* is that here only the unlawful stop put the officers in a position to detain defendant's effects unless he consented to a search.

In *Kennedy,* two officers, acting on a call from a Florida detective, approached an airline passenger at the Portland airport. When one officer politely asked whether he might talk with the suspect, stating that he was a police officer and had information that the suspect might be carrying narcotics in his luggage, the suspect volunteered the invitation: "Would you like to search my luggage?" This court did not decide whether the encounter was a "stop" within the meaning of

---

the reason for the inspection, if discovered without a further search, then might have been admissible in criminal as well as in administrative proceedings. *See Nelson v. Lane County,* 304 Or 97, 104-06, 743 P2d 692 (1987); *State v. Boyanovsky,* 304 Or 131, 134-35, 743 P2d 711 (1987) (Gillette, J., concurring); *cf. State v. Pidcock,* 306 Or 335, 759 P2d 1092 (1988). But the state does not assert that this roadblock was a regulatory rather than a criminal law enforcement checkpoint. The officers' good faith belief that the checkpoint stop was lawful does not bear on the decision.

ORS 131.605(5)[2] or whether the officer had grounds for a stop, because the court concluded that in the "totality of the facts and circumstances" the defendant had voluntarily invited the officers to search his luggage.

■     As the Court of Appeals noted, *Kennedy* was based on federal Fourth Amendment precedents. Even under the "totality of circumstances" test, however, the circumstances here are unlike those in *State v. Kennedy.* Kennedy was not told that his suitcase would be held. He was not pressed to choose between consenting to a search of his effects or waiting while the officers sought a search warrant through the district attorney's office.[3] This case would parallel *Kennedy* if the officers had approached defendant's pickup truck on a parking lot, sniffed the boxes on suspicion, asked the driver whether they might talk about their contents, and if defendant had then invited the officers to search the boxes. Of course, that is not what happened here. Unlike the officers in *Kennedy,* and like the officer in *Pooler,* these officers had no grounds to suspect defendant before the stop.[4]

This case again pits the "voluntariness" of a defendant's incriminating disclosure against the judicial assessment of the acts leading to that disclosure, and it again shows that while the events and their psychic effects may be questions of fact, the legal effect of the "voluntary" disclosure remains a legal, not a factual, judgment. *See State v. Wolfe,* 295 Or 567, 571, 669 P2d 320 (1983); *State v. Kennedy, supra,* 290 Or at 502. Under the state's view, a consent to search is voluntary if officers let a person choose to consent or to take the consequences, regardless how the officers gained the

---

[2] ORS 131.605(5) provides:

"As used in ORS 131.605 to 131.625, unless the context requires otherwise:

"* * * * *

"(5) A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

[3] The delay could be substantially reduced by a system making use of available technology. *See State v. Brown,* 301 Or 268, 278 n 6, 721 P2d 1357 (1986).

[4] Indeed, the stop as such gave no grounds for suspicion until one officer went beyond the documents check that was its object and stepped back to lean over the bed of the truck and sniff the boxes. This differs from a police dog's apparently random discovery of the smell of marijuana emanating from one of many storage lockers, in a place where officers were entitled to be, which supported a search on probable cause in *State v. Slowikowski,* 307 Or 19, 761 P2d 1315 (1988).

power to threaten the consequences and to force the choice on the person. That theory of "voluntariness" would equally apply if officers conduct a roadblock, examine all vehicles and drivers for evidence of alcohol or drugs, and then let those found with such evidence choose either to consent to searches and chemical tests or to face warrants or license suspensions. That cannot be squared with *Pooler*.

■■   We do not hold that consent can never legitimize a search when the occasion to give or refuse consent followed some unauthorized act of the police. We hold only that a search is not legitimized by consent obtained under the pressure of police action that became available to police only by the prior unauthorized conduct. Certainly officers may request permission to inspect or search one's effects, and consent, particularly when granted after being informed of one's right to decline, as in this case, could be a voluntary waiver of a known right. But this defendant told the officers that he did not want them to search the truck or its contents; he wanted to leave. It was only after that wish was denied that defendant began to weigh the consequences of consent against the alternative that the truck would be detained indefinitely while the officers sought a search warrant. In putting the choice to defendant in those terms, the officers (as stated in more detail in Justice Carson's concurring opinion) were trading on evidence that they had only by virtue of the unlawful roadblock. That is a far cry from *Kennedy.*

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to that court.

**CARSON, J.,** concurring.

The unlawful stop ultimately resulted in the seizure of contraband. Were that all, the unlawful stop would require the exclusion of the evidence garnered from the stop, in this case depriving the police of probable cause necessary for a lawful arrest. *Pooler v. MVD,* 306 Or 47, 52-53, 755 P2d 701 (1988); *see also State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977).

Defendant, however, consented to the search. The validity of his consent determines the outcome of this case. If

the consent were involuntary and, thus, invalid, the subsequent search and resulting seizure, arrest, and conviction likewise were invalid.

A police officer may inform a person that, unless a consent to search is given, the officer will seek a search warrant; the justification is that, although it is coercion, it is constitutionally permissible coercion. *State v. Hirsch,* 267 Or 613, 622, 518 P2d 649 (1974) (citing *State v. Douglas,* 260 Or 60, 488 P2d 1366 (1971)). As Chief Justice O'Connell explained in *Douglas:* "If the officers threaten only to do what the law permits them to do, the coercion that the threat may produce is not constitutionally objectionable." *State v. Douglas, supra,* 260 Or at 81 (O'Connell, C. J., dissenting on other grounds).

In this case, Officer Becker told defendant that, unless defendant consented, Becker would detain the pickup until he communicated with the district attorney about a warrant. Because the stop was unlawful, however, Becker could not lawfully detain defendant's pickup, either on the basis of the stop itself or on the basis of evidence garnered from the stop. Thus, Becker could not lawfully assert that he would detain the pickup; his statement that he would do so was a material misrepresentation of what the law permitted, consequently invalidating defendant's consent to search. *Cf. State v. Hirsch, supra; State v. Douglas, supra.*

**VAN HOOMISSEN, J.,** dissenting.

Two state troopers stopped defendant's pickup truck at a drivers' license and vehicle registration checkpoint.[1] Trooper Becker politely asked defendant for his driver's license and vehicle registration. Defendant gave his license to

---

[1] The stop in this case occurred before the Court of Appeals' decision in *Nelson v. Lane County,* 79 Or App 753, 720 P2d 1291 (1986).

At the hearing, without objection, the state offered excerpts from the Oregon State Police manual detailing OSP's procedures for license plate, driver's license and vehicle registration stops. Defendant's counsel told the trial court that he was not contesting that the stop had been conducted pursuant to the manual. During oral argument in this court defendant's counsel conceded that the troopers had had no reason to believe this stop was unlawful. Therefore, if there was any legal error in this case, it was not the fault of the troopers. They followed their manual and at all times acted in good faith. The state, however, does not argue that this court should recognize a good faith exception in this case.

Becker, who recognized the name on the license as being a person involved with narcotics.[2] Defendant told Becker that there was some problem with the registration; the truck actually belonged to his former wife, who had a different name and address. As defendant was searching for the vehicle registration, Becker took a step toward the rear of the truck and "sniffed" the truck's open bed. He smelled what he believed to be marijuana.[3]

Becker told defendant that he had smelled marijuana. He gave defendant Miranda warnings. Defendant signed a Miranda form acknowledging receipt of the warnings. Becker then asked if he could search the truck, specifically advising defendant of his right to refuse to consent to a search. Defendant said that he did not want Becker to search and that he wanted to leave. Becker told defendant that he could consent to a search, or Becker would detain the truck until he could contact the district attorney and attempt to obtain a search warrant; the decision was up to defendant.[4] Defendant does not contend that he was under arrest before Becker searched the truck.

Several minutes passed during which defendant tried to negotiate with Becker. In response to defendant's questions

[2] On cross-examination, defendant's counsel asked Becker:

"Q. Did you ever run across Mr. Williamson before?

"A. I've heard the name.

"Q. And what have you heard the name in regard to?

"A. Narcotics.

"* * * * *

"A. I had never met Mr. Williamson prior to this. Mr. Williamson's name had come up when I worked the marijuana thing involved in the Applegate, and that information came from another detective that worked drugs."

[3] By "sniffing" the open bed of the pickup, Becker did not invade any constitutionally protected privacy interest of defendant. *See State v. Slowikowski*, 307 Or 19, 761 P2d 1315 (1988).

[4] The Court of Appeals opinion incorrectly states that "Becker told defendant that, if he did not consent to a search, *he* would not be allowed to leave until the officer attempted to get a search warrant." 92 Or App at 428. (Emphasis added). Becker's testimony, quoted in the Court of Appeals opinion, 92 Or App at 428-29, shows only that Becker told defendant that he would detain the *truck*. This difference is significant. Defendant was not told that he could not leave. Defendant could have told Becker, "You can hold my truck, but I am going." Nothing in the record indicates that defendant could not have walked away, called a taxi, or asked a friend to drive him elsewhere.

as to what the troopers would do if they found marijuana, Becker stated that it would depend on the quantity; if the quantity was small, they would probably only issue a citation. Defendant does not argue that Becker misled him. Eventually, saying "[t]here's not much [marijuana] in there" and that the marijuana was being grown for his own use, defendant consented to a search and signed a consent-to-search form.[5] Defendant's words indicate that he believed the quantity of marijuana in his truck was small and the worst that could happen to him would be that he would be cited. Becker seized 37 marijuana plants.

On appeal, the state concedes that the stop was unlawful.[6] Therefore, the only issue is whether the consent was voluntary. The trial court concluded that it was. I agree.

The taint of an illegal stop may be purged by a subsequent valid consent. *State v. Kennedy,* 290 Or 493, 502-03, 624 P2d 99 (1981); *State v. Quinn,* 290 Or 383, 393-97, 623 P2d 630 (1981). If valid consent is given, the illegality of the stop is irrelevant to all evidence obtained after the consent.[7] Examining the totality of the facts and circumstances here, I conclude that defendant's consent was given by his free will and not as a result of coercion.

To review the evidence, defendant was stopped by

---

[5] At the hearing, defendant testified that he "wasn't going to sign [the consent-to-search form] unless [Becker] assured [him] that [he] wouldn't be taken to jail * * *." Becker denied making any promises to defendant. The trial court specifically found Becker credible and believed his testimony.

[6] The state's concession is unfortunate. *Nelson v. Lane County,* 304 Or 97, 743 P2d 692 (1987), and *State v. Boyanovsky,* 304 Or 131, 743 P2d 711 (1987), involved criminal law enforcement stops. In this case, the prosecutor told the trial court that the stop was a regulatory inspection, not a criminal law enforcement stop condemned by the Court of Appeals in *Nelson,* 79 Or App at 753, and that the threshold question for the trial court was the validity of the stop. The state, however, does not pursue that argument on appeal.

Even though it was aware of the Court of Appeals decision in *Nelson,* the trial court made no finding as to the legality of the stop, relying only on its finding of consent in denying the motion to suppress. This court and the Court of Appeals have repeatedly instructed trial courts to make specific findings of fact when presented with multiple issues relating to the admissibility of evidence.

[7] The Court of Appeals apparently misread this court's decision in *Pooler v. MVD,* 306 Or 47, 755 P2d 701 (1988). *Pooler* is inapposite here. Consent was not an issue in that case. *Pooler* explains that an arrest is not invalid simply *because* a stop is unlawful. 306 Or at 52. Similarly, a search is not invalid simply *because* a stop is unlawful. If the defendant consents, the illegality of the stop is irrelevant.

two state troopers on a public highway during daylight hours. Marked police cars were parked alongside the road. The stop was conducted in accordance with written state police procedures which gave the troopers no discretion as to whom they would stop. The purpose of the checkpoint was to check license plates, vehicle registrations and drivers' licenses. There is no claim that in initially stopping defendant's truck the troopers singled him out for special treatment. In context, it would be difficult to imagine a less coercive atmosphere.

At every stage of the proceedings defendant was advised of his legal rights. Becker advised defendant of his *Miranda* rights and defendant acknowledged in writing receipt of the warnings. Becker advised defendant of his right to refuse to consent to a search. The entire conversation appears to have occurred while defendant was seated in his truck. Defendant tried to negotiate a citation rather than an arrest, a course of action that indicates that he knew he could refuse to consent. He was given a clear choice between consenting to the search or being temporarily inconvenienced by having his truck detained while Becker tried to obtain a search warrant. At all times, the choice was defendant's. Based on what he thought would be most convenient for him, he voluntarily chose to consent to the search, and he acknowledged his consent in writing.

Becker had recognized defendant's name as that of a person who was involved in narcotics. Becker had smelled marijuana in the truck bed. Defendant had admitted that there was marijuana in the truck bed. Defendant's consent was not the result of any deception by the troopers. At all times, Becker truthfully and forthrightly explained his options and the consequences to defendant. After confiscating the marijuana, Becker issued defendant a citation and permitted him to drive away. That was precisely what defendant expected and what he had bargained for.

The record shows that defendant's consent was not gained by "exploitation" of the unlawful stop. Rather, it was the product of his informed and reasoned choice. Defendant's free will was not tainted by the unlawful stop. By consenting, he made the illegality of the stop irrelevant to subsequently obtained evidence. Therefore, the ruling of the trial court should be upheld.

Peterson, C. J., and Jones, J., join in this dissenting opinion.