Argued and submitted March 20, affirmed October 9, 1991, reconsideration denied February 5, petition for review denied March 24, 1992 (313 Or 74)

## William Sanford MOORE,
*Petitioner,*

*v.*

## MOTOR VEHICLES DIVISION,
*Respondent.*

(08 890712 10045; CA A65351)

818 P2d 974

Clint A. Lonergan, Portland, argued the cause for petitioner. With him on the brief was Richard L. Lonergan, Portland.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

Buttler, P. J., dissenting.

## DE MUNIZ, J.

Petitioner seeks judicial review of a Motor Vehicles Division (MVD) order that revoked his driving privileges when it affirmed MVD's previous determination that he is a habitual traffic offender. ORS 809.640; ORS 809.600(1). He challenges MVD's use of a DUII conviction and a DWS conviction as underlying offenses in its determination. We affirm.

Petitioner was convicted of DUII in September, 1984, DWS in December, 1987, and another DUII in April, 1989. MVD determined that it was required to revoke his driving privileges, because he was a habitual traffic offender under ORS 809.600. It sent him notice of the revocation. ORS 809.640(1). Petitioner requested a hearing. MVD stayed the revocation pending the hearing. ORS 809.640(2).

At the hearing, petitioner argued that MVD should not have used the 1984 DUII conviction in its determination that he was a habitual traffic offender, because he was not represented by counsel and did not knowingly waive his right to counsel when he was convicted of that offense. He also argued that MVD should not have used the DWS conviction in its determination. He conceded that he had pled guilty to that charge. At the time he committed the DWS offense, it was a misdemeanor that could be used in a habitual traffic offender determination. *Former* ORS 811.175; *former* 809.600(1)(c). However, he contended that, due to subsequent amendments to the applicable statutes, Or Laws 1987, ch 730, §§ 1, 17, the offense would now be a traffic infraction that could not be used in a habitual traffic offender determination. ORS 811.175; ORS 809.600(1)(c).

The hearings officer assumed, *arguendo,* that petitioner could raise those contentions concerning the underlying convictions in the hearing, and he rejected them. He concluded that petitioner failed "to produce evidence sufficient to prove the invalidity of [the 1984 DUII] conviction." He also concluded that the subsequent change of law did not change the status of petitioner's DWS conviction. He made findings necessary to affirm the determination that petitioner was a habitual traffic offender and ordered that his driving privileges be revoked. ORS 809.640(7)(a).

On judicial review, petitioner renews his challenges to the underlying convictions. We affirm MVD's order, but for reasons different from those of the hearings officer. In *State v. Jackson,* 34 Or App 587, 579 P2d 299 (1978), we held that proceedings under the Habitual Traffic Offenders Act are civil and that a defendant cannot collaterally attack the validity of an underlying conviction in the habitual traffic offender hearing. When we decided *Jackson,* the statutes governing habitual traffic offender proceedings did not define the scope of the hearing. However, ORS 809.640(5) now defines that scope:

"The scope of a hearing under this section shall be limited to a determination of the following:

"(a)   Whether the person is the person named on the driving record.

"(b)   *Whether the convictions or bail forfeitures shown on the driving record are those of the person named on the driving record.*

"(c)   Subject to ORS 809.630, whether the division provided notice under ORS 809.620." (Emphasis supplied.)

In spite of that narrow language, petitioner contends that the Supreme Court's decision in *Pooler v. MVD,* 306 Or 47, 755 P2d 701 (1988), mandates that we construe the statute to permit a collateral attack on the underlying convictions in a habitual traffic offender proceeding.

In *Pooler,* the petitioner challenged the suspension of his driving privileges after he had failed a breath test. *Former* ORS 482.541(4) limited the scope of the administrative hearing to the determination of whether the requirements for a valid suspension under *former* ORS 487.805 had been met. Those requirements included whether "[t]he person, at the time the person was requested to submit to a test under ORS 487.805, was *under arrest* for driving while under the influence of intoxicants." *Former* ORS 482.805(4)(a). (Emphasis supplied.) The court determined that "the term 'under arrest' in *former* ORS 482.541 meant a valid arrest." 306 Or at 51. It also concluded that, "[i]f the arrest must be valid, it follows that the scope of the administrative hearing before the hearings officer included the question of the validity of the arrest." 306 Or at 51.

Here, the statutory language is much more specific and limiting than the language construed in *Pooler*. *Former* ORS 482.541 did not dictate how MVD was to determine that the person was under arrest for DUII. In contrast, ORS 809.640(5) limits MVD solely to a determination of whether there was an error in compiling the convictions shown in the driving record supporting the revocation order.

Notwithstanding the express language of ORS 809.640(5), petitioner contends that ORS 809.640(6) actually provides a method for determining whether a prior conviction is valid. Petitioner misconstrues the purpose of that section. ORS 809.640(6) provides:

"If the person requesting the hearing *denies having been convicted* of or having forfeited bail for any offense necessary for the finding that the person is a habitual offender, and if the division cannot make a determination of the issue on the evidence available, the division shall certify the issue to the court in which the conviction or bail forfeiture was made. The court to which the certification is made shall forthwith conduct a hearing to determine the issue and shall send a certified copy of its final order determining the issue to the division." (Emphasis supplied.)

When read together, subsections (5) and (6) of ORS 809.640 simply provide MVD with a method to verify, in response to a denial, that the convictions shown in the driving record were actually entered against the person in the designated court. They say nothing about testing the constitutional infirmity of a prior conviction.

Finally, the issues in the implied consent hearing in *Pooler* were fundamentally different from those in an habitual traffic offender proceeding. A hearing under the Implied Consent Law is the driver's only opportunity to challenge the legality of the official conduct giving rise to the proposed suspension. In this context, it can be argued that the state has an obligation, as part of its administration of the Implied Consent Law, to regulate police conduct and to seek to deter future constitutional abuses.[1] That result can be accomplished in part through decisions in implied consent hearings.

---

[1] In *Pooler,* the Supreme Court said:

"[W]e conclude that the legislature must have intended a valid arrest when it used the term 'under arrest' in that statute. Were that not so, police officers would be free to stop drivers at random, without probable cause or reasonable

No comparable state obligation exists in connection with a habitual traffic offender proceeding. A driver who is subject to a habitual traffic offender proceeding, on the basis of prior criminal convictions, has other routes to challenge any aspect of police or governmental conduct or procedure involved in obtaining those convictions. We find no language in the statute and no policy justification for permitting a collateral attack on prior convictions in a habitual traffic offender proceeding.

The language of ORS 809.640(5(b) is unambiguous. It did not allow the hearings officer to determine whether petitioner's 1984 DUII conviction was invalid, nor did it allow him to determine whether the amendment to the statutes changed the status of petitioner's DWS conviction in a determination under ORS 809.600. For purposes of the habitual traffic offender proceeding, petitioner had prior convictions and MVD properly revoked petitioner's driving privileges.

Affirmed.

**BUTTLER, P. J.,** dissenting.

The majority makes too much of the amendment to ORS 809.640 after our decision in *State v. Jackson,* 34 Or App 587, 579 P2d 299 (1978), in which we held that the defendant could not collaterally attack the validity of his alleged underlying convictions in the habitual traffic offender hearing. That decision would be controlling here, even without the amendment defining the scope of the hearing, but for *Pooler v. MVD,* 306 Or 47, 755 P2d 701 (1988).

The issue in *Pooler* was whether MVD, in an administrative (not criminal) proceeding to suspend Pooler's driver's license for failing a breath test, was required to determine whether his arrest was valid when he contended that it was not. The court held that it was, because the implied consent law required the driver to take a breath test only if he was under arrest for DUII, although the *scope* of the hearing was limited to determining whether the requirements for a valid suspension under *former* ORS 487.805 (now ORS 813.100) had been met. There was no dispute but that Pooler

---

suspicion, hoping to identify the occasional DUII driver. Such random activities by the police would be unconstitutional." 306 Or at 51. (Citations omitted.)

had been arrested, but he contended that the arrest was without probable cause and was, therefore, invalid. The court held that, in order to trigger Pooler's obligation to submit to a breath test, his arrest must have been valid and, therefore, the scope of the administrative hearing had to include the question of the validity of the arrest.

Similarly, under the Habitual Traffic Offenders Act, ORS 809.600 *et seq,* a person's driver's license may be revoked "if the person, within a five-year period, has been convicted of three or more" named offenses, including DUII and DWS. As in *Pooler,* certain conditions must exist before revocation or suspension is permissible. In *Pooler,* the person must have been under arrest; here, the person must have been convicted. *Pooler* held that simply being under arrest was insufficient; the arrest had to be valid. Here, a record of a conviction is insufficient; the conviction must be valid.

The Supreme Court held in *State v. Grenvik,* 291 Or 99, 628 P2d 1195 (1981), that a conviction obtained without the benefit of counsel or a valid waiver of the right to counsel is void and that a valid waiver will not be presumed from a silent record. Because the record there was silent, the conviction was not admissible against the defendant to support the enhanced criminal charge. After *Grenvik,* we decided *Matteson v. Board of Parole (Matteson I),* 52 Or App 737, 629 P2d 1317, *rev den* 291 Or 662 (1981), in which the petitioner claimed that the Board had erred in setting his parole release date, because it had improperly considered certain of his convictions in establishing his criminal history/risk score. The record was silent as to whether the petitioner had had counsel or whether he had waived his right to counsel. We remanded the case to the Board to consider the impact of *Grenvik* on its procedures.

On remand, the Board adopted instructions relating to the form used to determine an inmate's criminal history/ risk score. In substance, the instructions were not to count convictions in which the inmate was deprived of counsel; however, it put the burden on the inmate to establish that fact. If an inmate challenged a conviction, he was to be advised to petition for "a reversal" in the court in which he was tried and to supply the Board with evidence of the "reversal." Matteson failed to provide evidence that the

challenged convictions were invalid, and the Board sustained its earlier determination.

On Matteson's second petition for judicial review, 63 Or App 418, 421, 664 P2d 434 (1983) *(Matteson II),* we affirmed the Board's response to *Grenvik*:

"We believe the instructions represent a realistic method of dealing with the *Grenvik* question, given that the Board is not a court of law and that, although it is an agency (ORS 183.310(1)), it is not subject to the provisions of the Administrative Procedures Act governing contested case hearings. ORS 183.315. The Board has recognized that it is not a judicial body, that its members are not judges and that it does not have the authority to adjudicate the constitutional validity of an inmate's prior convictions. In the light of those inherent limitations, the Board decided to accord *prima facie* validity to a prior conviction rather than to assume invalidity from a silent record. There are judicial procedures by which an inmate may challenge the validity of prior convictions on constitutional grounds *(e.g.,* ORS 138.510 *et seq),* but petitioner has not availed himself of any of them."

After *Matteson II,* the legislature revised the Habitual Traffic Offenders Act. Or Laws 1985, ch 16, § 187. The revision included the addition of what is now ORS 809.640(6), which provides:

"If the person requesting the hearing denies having been convicted of or having forfeited bail for any offense necessary for the finding that the person is a habitual offender, and if the division cannot make a determination of the issue on the evidence available, the division shall certify the issue to the court in which the conviction or bail forfeiture was made. The court to which the certification is made shall forthwith conduct a hearing to determine the issue and shall send a certified copy of its final order determining the issue to the division."

It seems clear that that section provides a procedure by which a challenged conviction is to be resolved judicially. DMV does not contend otherwise; its argument is that petitioner did not request the hearings officer to utilize that procedure. The answer is that the statute *requires* DMV to certify the issue to the appropriate court, if it cannot make a determination of the issue on the evidence available.

Aside from what appears to be the statutory mandate, we have held that a person charged with driving while suspended by an order under the Habitual Traffic Offenders Act may attack the convictions that resulted in the habitual offender suspension order. *State v. Hardt,* 81 Or App 607, 726 P2d 953 (1986), *rev den* 303 Or 74 (1987). It would be anomalous to deny petitioner the right to challenge a conviction in this proceeding and require that he do so only in a later prosecution for violating the order suspending his license. Furthermore, the state has taken the position that a defendant in a criminal proceeding *must* raise the validity of his conviction in the habitual traffic offender proceeding or waive it. *See State v. Fritz,* 85 Or App 1, 735 P2d 1228, *rev den* 303 Or 700 (1987); *State v. Hardt, supra.* The state cannot have it both ways.

Although the hearings officer believed that petitioner could not raise the question in this noncriminal proceeding, he went on to decide the question. However, he put the burden on petitioner to fill in the silent record and held that he had failed to carry his burden. That was the approach taken by the Board of Parole in *Matteson II,* which was approved by us. Here, however, the legislature has provided a procedure for resolving the question judicially, and it was not followed.

Accordingly, I would reverse and remand for further proceedings.