Argued and submitted April 28, 1988, reversed and remanded for new trial
February 22, 1989

# STATE OF OREGON,
*Respondent,*

*v.*

# STEVEN SCOTT SCHELLHORN,
*Appellant.*

(10-86-08917, 10-86-09500, 10-86-10075;
CA A43575 (Control), A43576, A43577)
(Cases Consolidated)

769 P2d 221

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Defendant appeals his conviction for burglary in the first degree, ORS 164.225, and unlawful possession of a controlled substance, ORS 475.992, arguing that the trial court erred in denying his motion to suppress. We reverse and remand.

On November 13, 1986 at 1:14 a.m., Officer Olson of the Eugene Police Department encountered defendant riding a bicycle without a light on a public street. Olson testified that he slowed down alongside defendant and saw what appeared to be a rolled up purse in his left hand and that defendant appeared to be avoiding his gaze by looking forward. Defendant was wearing dark clothing and tennis shoes, which Olson testified he associated with the type of apparel commonly worn by burglars. He also testified that defendant was riding the bicycle away from a neighborhood with a high burglary rate. Olson stopped defendant and immediately grabbed the purse out of his hands. He testified that he did that because he feared that the purse could have been used as a weapon against him. When he seized the purse, Olson noticed that it was "extremely heavy" and opened it. He testified that he did so because he feared that it may have contained a weapon. He found approximately $40 in change in the purse.

Olson asked defendant's name, which he recognized as one appearing on police bulletins listing "heavy pawners" of stolen items. He ordered him to place his hands on the hood of the police car and informed him that he was going to "pat him down" for weapons. However, he decided to handcuff defendant before the frisk, because he "wasn't following instructions clearly" and because he was "gazing around" in the direction from which he had come.[1] During the frisk, Olson found a micro recorder, a bent spoon, Q-tips, coins, a small money clip and some jewelry in defendant's pockets. He testified that he removed some of the items from the pockets, because they felt like weapons, and that others were removed in the process of removing the items that felt like weapons. When asked where he had obtained the items, defendant gave

---

[1] After handcuffing defendant, but before conducting the pat down, Olson advised him of his *Miranda* rights. However, in response to defendant's inquiry as to whether he was under arrest, Olson told him that he was not.

Olson inconsistent accounts. Olson then searched the purse and discovered a bag of methamphetamine in a zipped pouch on the side.

Olson placed defendant under arrest for possession of a controlled substance. He then checked the serial number on the bicycle and learned from the dispatcher that it had been reported stolen. A subsequent check of the items found in defendant's pockets revealed that they, too, had been reported stolen. In a stipulated facts trial, defendant was convicted of possession of a controlled substance and first degree burglary. He appeals, arguing that his motion to suppress the items found during the frisk and subsequent search should have been granted, because the search and seizure were in violation of Article I, section 9, of the Oregon Constitution, and the Fourth and Fourteenth Amendments. The trial court ruled that the items were admissible as evidence found during a lawful stop, frisk and search[2] and that, in any event, they would be admissible under the "inevitable discovery rule." Defendant concedes that the initial stop in this case was valid, because he was riding a bicycle without a light, in violation of ORS 815.280. However, he argues that the seizure of the purse and the ensuing frisk and search were unlawful.

An officer may take reasonable steps to protect himself if, during a lawful encounter with a citizen, the officer develops a reasonable suspicion, based on specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer. *State v. Bates,* 304 Or 519, 524, 747 P2d 991 (1987). The trial court in this case held that the seizure of the purse was justified, because the officer reasonably feared that it could be used as a weapon against him.[3] We agree that there were specific and articulable facts

---

[2] Specifically, the trial judge ruled that the stop was valid because defendant's failure to have a light on the bicycle was a traffic infraction, that the seizure and initial opening of the purse were valid because the officer reasonably feared that it either contained or could be used as a weapon, that the handcuffing and frisk were valid because defendant's conduct led the officer to have a reasonable fear for his safety and that the extended search of the purse was valid because, after the frisk, the officer had probable cause to believe defendant had committed a burglary.

[3] The trial court found:

"[W]e have an early-morning hours gentleman on a bike without a light wearing dark clothing coming out of a high-crime/high-burglary/high-car-theft area. The officer apparently slows down his automobile and drives alongside of

supporting Olson's suspicion that defendant posed an immediate threat to him, and we hold that the seizure of the purse was a reasonable protective measure under the circumstances.

■■ However, once the officer had seized the purse, he no longer had any reason to believe that it still posed an immediate threat to him. The fact that the purse was unusually heavy may have given the officer reason to believe that it contained a weapon. However, the officer had the purse in his possession and, if he believed that it contained a weapon, he could have taken steps to protect himself without opening it. Before the officer could open the purse and inspect its contents, he was required to have probable cause to believe that it contained evidence of a crime and there had to be exigent circumstances to justify not obtaining a search warrant. Neither of those conditions existed. Thus, the officer's inspection of the contents of the purse after seizing it was unlawful.

■■ Because we hold that the initial search of the purse was unlawful, any reasonable suspicion or probable cause that may have arisen as a result of that search could not support a subsequent frisk and search. *See Pooler v. MVD,* 306 Or 47, 52-53, 755 P2d 701 (1988). The officer testified that, after he saw the contents of the purse, he suspected that defendant had committed a burglary. He also testified that his decisions to frisk defendant and later to search the purse thoroughly were based in part on that suspicion. Accordingly, the evidence discovered thereby was subject to suppression.

■ The state argues that, even if the seizure, frisk and search were unlawful, the evidence is nevertheless admissible under the "inevitable discovery rule." Generally, the inevitable discovery doctrine requires a showing that certain proper and predictable investigatory procedures would have been used and that they would have resulted in the discovery of the evidence in question. *State v. Miller,* 300 Or 203, 226, 709 P2d 225 (1985).

---

him at the speed of a bike with no reaction and he pulls him over.

"First of all, the purse is unusual, with the purse clearly that is unusual. The way it was wrapped up and displayed it looked like an obvious blunt instrument, and I guess the best comparison I could give it would be like somebody getting off a bike with a fish-whacker in their hand. Any police officer who doesn't take that out of your hand would be a numbskull."

The officer testified that, because of the large number of bicycle thefts in Eugene, he routinely checks serial numbers on bicycles that he stops for traffic infractions. He also testified that, even if no search or seizure had occurred, he would have "ran the bicycle for warrants" and would have discovered that it was stolen. After learning that it was stolen, he would have arrested defendant for possession of stolen property, taken him to the county jail, inventoried the contents of his pockets and the purse and, therefore, would have discovered the methamphetamine and stolen property. The trial court made extensive findings of fact that essentially adopted all of the officer's testimony, including his testimony as to the procedures that he would have followed had the search and seizure not occurred.[4] On those findings, the trial court held that the test for the application of the inevitable discovery rule was met.

We are bound by the findings of the trial court if there is evidence in the record to support them. *State v. Miller, supra,* 300 Or at 227. As discussed above, there is evidence in the record to support the court's finding that the officer would inevitably have discovered the methamphetamine and stolen property.[5] Nonetheless, the inevitable discovery rule is not applicable here, because ORS 133.683, which codifies the doctrine, makes it inapplicable to the facts of this case. ORS 133.683 provides:

"If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a

---

[4] The trial judge stated, in relevant part:

"First of all, I think the evidence supports the application of inevitable discovery. The gentleman would have been placed under arrest by the police officer for possession of stolen property and taken to jail and booked and property inventoried. Undeniably, the jail as a matter of policy, and I think as cases have shown through years of book-in cases, they would have had to count money. Count the property because innumerable cases show that jails are liable for losing people's property, and here we had jewelry and change of a variety of denominations and a fair amount of money in silver. I think it is a matter of case law and common knowledge that people get booked into jail for full-custody arrests * * *. Inevitably the material would have been discovered."

[5] Because we conclude that the inevitable discovery doctrine does not apply in this case, we do not address the question of whether opening the purse and unzipping the side pocket would have been permissible during an inventory process.

defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

Notably, the statute applies only when "as a result of [an unlawful] search or seizure *other evidence is discovered subsequently.*" (Emphasis supplied). The evidence in this case was discovered *during* the unlawful search and is not "other evidence" subsequently discovered as a result of the search. *State v. Miller, supra,* 300 Or at 228. Arguably, the statute was only intended to codify the "fruit of the poisonous tree" doctrine as applied to derivative evidence discovered subsequent to an illegal search or seizure, not to preclude an application of the common law doctrine when primary evidence is involved.[6] However, in the *Miller* opinion it is at least implicitly held that, because the statute does not cover situations where evidence is discovered *during* an unlawful search, inevitable discovery is not available to "untaint" such evidence.

In *Miller,* the defendant sought to suppress evidence obtained during a warrantless search of his hotel room. The police had learned about the evidence during an unlawful interrogation and then searched the room without first obtaining a warrant. The state argued that, even if the evidence was discovered as a result of an unlawful interrogation and unlawful search, it still should have been admitted under ORS 133.683, because it inevitably would have been discovered by the hotel maid the following morning. The Supreme Court refused to "purge the taint" under that statute:

> "The text of ORS 133.683 * * *, although not a model of clarity, appears to apply only to purge the 'taint' of evidence (poisoned fruit) derived from a prior unlawful search or seizure. For example, *it does not appear to apply either to primary evidence seized in the course of an illegal search* or to evidence which is the 'fruit' of a Fifth and not a Fourth Amendment violation." 300 Or at 228. (Emphasis supplied.)

---

[6] The state relies on ORS 133.683 as the codification of the inevitable discovery doctrine in Oregon and does not assert that the common law doctrine remains regarding primary evidence discovered *during* an illegal search.

The court then concluded that the evidence would have to be suppressed, unless the search could be justified on some other ground. 300 Or at 228-29.

The evidence discovered during the unlawful frisk and search in this case was all primary evidence discovered *during* the police misconduct.[7] Accordingly, the inevitable discovery rule does not apply, and the evidence should have been suppressed.

Reversed and remanded for a new trial.

---

[7] This court made a similar distinction and reached the same conclusion in *State v. Crossen,* 21 Or App 835, 838, 536 P2d 1263 (1975):

"To dilute the exclusionary rule in this manner would defeat one of the purposes of the rule, i.e., to discourage illegal police conduct. Instead it would encourage unlawful searches in the hope that probable cause would be developed after the fact. The inevitable discovery rule has been applied only to purge the taint from derivative, not primary, evidence and we see no reason in this case to extend it to the latter."

However, since *Crossen* was decided, the Supreme Court has determined that deterrence of police misconduct is *not* one of the purposes of Oregon's exclusionary rule. *See State v. Tanner,* 304 Or 312, 315 n 2, 745 P2d 757 (1987).