Argued and submitted July 27, 1990, affirmed April 10, reconsideration denied July 24, petition for review pending 1991

## STATE OF OREGON,
*Respondent,*

*v.*

## STANLEY EDWARD JACOBUS,
*Appellant.*

(C88-10-38136; CA A61294)

809 P2d 108

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warren and Deits, Judges.

RICHARDSON, P. J.

Warren, J., dissenting.

## RICHARDSON, P. J.

Defendant appeals his conviction for possession of a controlled substance, heroin. ORS 475.992. He contends that the court erred by denying his motion to suppress evidence seized from his person without a warrant. After the motion was denied, defendant stipulated to the facts, was convicted and appeals. We affirm.

The arresting officer, Costello, was the only witness to testify at the hearing. We summarize the trial court's findings, which defendant does not dispute. At about 8 or 9 p.m., Costello was dispatched by police radio to a Minit Mart convenience store near the intersection of 77th Avenue and Foster Road in Portland. The dispatcher said that a store employee had been told by a customer that the customer had overheard the occupants of an orange Datsun automobile say "there was only one clerk in the store." The clerk had asked that the police check out the Datsun, which was said to be parked on the street near the store but could not be seen from the store.

Costello approached southbound on 77th Avenue and saw an orange Datsun parked on 77th Avenue facing north and out of view of the front of the Minit Mart. As he drove toward the Datsun, he saw that there were two men and a woman in the car. He went past the car, turned around and saw the occupants "move around [in] the vehicle quite frantically," as if stuffing something under the seats. When he pulled in behind the vehicle and turned on the overhead lights, the female and one male got out and walked past him toward the Minit Mart. The other male, defendant, remained in the back of the Datsun.

As Costello approached the car, he saw defendant stuffing something down behind the seats or under some clothing. He asked defendant to get out of the car, which he did after the third request. Costello turned defendant over to another officer who had arrived to help cover the call and went to the store to talk to the clerk and to check on the two people who had left the car. He returned after not finding the two people. He asked defendant for identification, and defendant said that he did not have any. Costello asked defendant whose coat it was laying in the back of the car, and defendant said that it was his. Costello testified that he then asked if defendant "minded if [I] looked through the coat. He said, 'Go

ahead.' " The officer picked up the coat and felt a wallet in one pocket and a small object in another. He did not reach into the pockets but handed the coat to defendant, after he was satisfied that it contained no weapons. As defendant reached for the coat, a small object, a finger ring box, fell to the ground. The officer asked what the container was, and defendant replied that he did not know. Costello testified that he asked "if he minded if [I] looked through it because it came out of his coat, and he said, 'Go ahead.' " The officer looked in the ring box and found heroin.

Defendant argues that when the officer pulled in behind the Datsun and turned on the overhead lights, that constituted a stop and that, because there was no basis for it, the stop was unlawful under ORS 131.615 and the state and federal constitutions. Therefore, he contends, the unlawful stop, in conjunction with the other circumstances, made the search unlawful.

The state conceded at trial that there was a stop under ORS 131.615, at least when the officer asked defendant to get out of the car. It argues, however, that there was reasonable suspicion that the three people were involved in criminal activity and that the stop was lawful under the statute. The state also contends that, even if the stop violated the statute, defendant's consent to search was valid and the evidence was properly seized.

In *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981), the court held that an unlawful stop does not necessarily require suppression of evidence obtained following the stop. In other words, there is not a "but for" test to determine if the evidence is legally seized. If the search is based on the consent of the defendant after the unlawful police conduct, the question is whether, under all the circumstances, including the facts of the unlawful conduct, the consent is a product of the defendant's free will. *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981). The court noted in *Kennedy* that the burden on the state to show voluntariness when consent occurs after an unlawful stop is greater than when no illegality has occurred. The court rejected the concept that, because the unlawful police conduct put the defendant in a position so that his consent could be requested and obtained, consent was therefore invalid.

Whether there was consent and whether it was voluntary or involuntary is a fact inquiry. However, as the court said in *State v. Williamson,* 307 Or 621, 625, 772 P2d 404 (1989), "while the events and their psychic effects may be questions of fact, the legal effect of the 'voluntary' disclosure [of evidence] remains a legal, not a factual, judgment." *See also State v. Wolfe,* 295 Or 567, 669 P2d 320 (1983); *State v. Kennedy, supra; State v. Douglas,* 260 Or 60, 488 P2d 1366 (1971), *cert den* 406 US 974 (1972). Although there may be elements of coercion in every police-citizen encounter, not every coercive factor inducing a consent to search is constitutionally impermissible. *State v. Douglas, supra.*

In *State v. Kennedy, supra,* the Portland Police Bureau received information from the Fort Lauderdale, Florida, Sheriff's Office that two men who fit a "drug smuggler's profile" had boarded a plane for Portland. The Portland officers were given a description of the men, went to the airport and saw two men fitting the description. When the two men parted, two officers followed one of them, the defendant. They approached him in the terminal concourse, identified themselves as police officers, asked if they could speak with him and told him that they had information that he might be carrying narcotics on his person or in his luggage. He denied that he had narcotics and said, "Would you like to search my luggage?" The officers "frisked" the defendant and then searched his luggage and found narcotics. The court said that it was unnecessary to decide if the stop was proper because, even assuming an unlawful stop and the heightened burden on the state, the defendant's consent was voluntary. The court noted that there were only two police officers present, that the confrontation occurred in the public area of the airport and that the defendant offered to open his luggage without a request from the officers.

At some distance on the factual spectrum from *Kennedy* is *State v. Williamson, supra.* Defendant and the dissent argue that *Williamson* supports the proposition that the police may not exploit the inherent coerciveness of a stop to gain consent when the stop is unlawful. The syllogism of the dissent is that unlawful coercion makes the consent invalid; there is coercion inherent in a stop; if the stop is unlawful, the inherent coercion is unlawful and the consent is invalid. However, the Supreme Court, in deciding *Kennedy,* specifically

rejected that argument and did not embrace it in deciding the validity of the defendant's consent in *Williamson.*

In the latter case, the court depended upon the amalgam of facts, rather than the unlawful stop alone, to invalidate the consent search. Officers had stopped the defendant's open-bed pickup truck at a police roadblock to check licenses and vehicle registrations. One officer recognized the defendant's name from a drug investigation and leaned down and smelled what he believed to be the odor of marijuana coming from boxes in the truck. After directing the defendant to park the truck in a nearby lot, the officer told the defendant that he had smelled marijuana, gave the defendant *Miranda* warnings and asked permission to search the boxes. The defendant said that he did not want the officers to search the boxes and that he wanted to leave. Another officer told the defendant that he also had smelled marijuana. One officer then told the defendant that they would detain the truck until they could seek a search warrant, unless he consented to a search. After further discussion, he agreed to the search. The officer found marijuana plants in the boxes.

The state conceded that the stop was unlawful, but argued that the defendant's consent was valid, because he had voluntarily selected one of two choices offered by the officers. The court said:

> "We do not hold that consent can never legitimize a search when the occasion to give or refuse consent followed some unauthorized act of the police. We hold only that a search is not legitimized by consent obtained under the pressure of police action that became available to police only by the prior unauthorized conduct." 307 Or at 626.

It was not simply that the opportunity to request consent arose because of the unlawful stop, but that, as a result of the stop, the police obtained evidence that the truck had marijuana in it and threatened to get a search warrant, a threat that they could not carry out, because the basis for a warrant was unlawfully come by. *See State v. Douglas, supra.* In addition, the court noted that the defendant, after being advised that he had a right not to consent, at first declined to allow a search. He was pressured into changing his mind by exploitation of unlawfully obtained evidence that he had marijuana in his truck and the threat to do what the officers were not

authorized to do. As the court noted, "That is a far cry from *Kennedy.*" 307 Or at 626. Contrary to the dissent, the case at issue is a far cry from *Williamson.*

What *Kennedy* and *Williamson* illustrate is what the Supreme Court and we have reiterated: Whether consent was voluntary is dependent on the facts of the individual case. *See, e.g., State v. Quinn, supra; State v. Warner,* 284 Or 147, 585 P2d 681 (1978); *State v. Douglas, supra.* In examining the totality of the facts and circumstances in this case, we conclude that defendant's consent to the pat down of the coat and the search of the ring box was voluntary, even under the stricter standard of review applicable when illegal police conduct precedes the consent. We assume, without deciding, that the stop was improper under ORS 131.615.

Defendant did not testify or present evidence as to whether his will was overborne by the circumstances of the encounter, so we are left to determine if there were sufficient objective indicia of coercion to vitiate his expression of consent. The indicia are the basic facts of the stop, the overhead lights, the order repeated three times for defendant to get out of the car and the presence of two uniformed police officers. The officer was polite in his requests to defendant and, although defendant was not free to leave, he was not otherwise physically restrained and the officers did not have their guns drawn. Defendant does not identify any other factors that may be considered as coercive. He was not threatened with any adverse consequences if he did not consent and was not presented with untenable alternatives.

Other than the inherent coercion that exists in an encounter with the police, *see State v. Kennedy, supra,* 290 Or at 504; *State v. Douglas, supra,* there were no other overtly coercive factors that imposed, in a constitutional sense, on defendant's expression of consent. The court properly denied defendant's motion to suppress.

Affirmed.

**WARREN, J.,** dissenting.

I do not agree that the result is the same whether or not the stop was valid. I would hold that the state did not meet its burden of proving that defendant's subsequent consent was voluntary. I dissent.

The majority's reasoning proceeds essentially this way: Every stop involves some coercion; this stop was no more coercive than most; therefore, defendant's consent after the stop was voluntary. That reasoning fails to take into account the significance of the illegality of the stop.[1] In the ordinary case, the state must prove by a preponderance of the evidence that a defendant's consent was voluntary. *State v. Stevens,* 311 Or 119, 137, 806 P2d 92 (1991). When the consent follows illegal conduct, however, that burden is greater. *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981). As the Supreme Court held in *State v. Williamson,* 307 Or 621, 626, 772 P2d 404 (1989):

> "We do not hold that consent can never legitimize a search when the occasion to give or refuse consent followed some unauthorized act of the police. We hold only that a search is not legitimized by consent obtained under the pressure of police action that became available to police only by the prior unauthorized conduct. Certainly officers may request permission to inspect or search one's effects, and consent, particularly when granted after being informed of one's right to decline, as in this case, could be a voluntary waiver of a known right."

I agree with the majority that every stop involves some coercion, and the inherent coerciveness of a lawful stop, without more, should not vitiate consent. I disagree with the majority, however, that police may exploit the coerciveness to gain consent when they do not have any reasonable suspicion to support the stop. Those tactics involve using "police action that became available to police only by the prior unauthorized conduct." *State v. Williamson, supra,* 307 Or at 626. A consent is not voluntary when it is the product of unlawful coercion. *See State v. Anfield,* 95 Or App 567, 770 P2d 919 (1989); *State v. Hageman,* 59 Or App 96, 650 P2d 175 (1982).

Consent after an unlawful stop may be voluntary when the state proves that the consent did not flow from the coerciveness of the situation. *State v. Williamson, supra,* 307 Or at 626, suggests that that burden might be met by evidence that the police informed the suspect that he has the right to

---

[1] The police lacked reasonable suspicion for the stop. Not only was the source of their information anonymous, the information itself provided only a weak inference that crime was afoot.

refuse consent. Alternatively, the burden might be met by evidence that the defendant volunteered his consent, as in *State v. Kennedy, supra,* 290 Or at 504. Here, however, no such evidence was presented. Defendant acquiesced in the search after the officer had turned on his overhead lights, asked to see his driver's license and commanded him three times to get out of the car. I would hold that the state did not meet its burden to prove that the consent was not the product of the coerciveness of the illegal stop.

I dissent.