Argued and submitted March 29, affirmed September 25, reconsideration denied
November 6, petition for review allowed December 17, 1991 (312 Or 527)

# STATE OF OREGON,
### *Respondent,*

*v.*

# DARIN JAMES NOBLE,
### *Appellant.*

## (10-89-02085; CA A63703)

818 P2d 938

Eric R. Johansen, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., specially concurring.

**EDMONDS, J.**

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns error to the denial of his motion to suppress evidence seized pursuant to a search incident to his arrest. We affirm.

After defendant was convicted of harassment, ORS 166.065, and attempted third degree escape, ORS 162.145, he was placed on probation with the condition that he pay a fine. When he failed to pay the fine, the trial judge ordered him to show cause why probation should not be revoked and issued a warrant for his arrest. The warrant was not supported by an affidavit or based on a sworn statement. Thereafter, Officer Kerns stopped defendant for riding his bicycle without a light after sundown. A records check revealed the arrest warrant. Kerns arrested and searched him. During the search, he found a wallet, which he searched for weapons or means of escape. He discovered a clear plastic bag that contained the LSD-laced blotter paper that led to defendant's conviction.

Defendant moved to suppress the blotter paper. At the hearing, Kerns testified that he conducted the search "for [his own] protection." He said that he was looking for "weapons or contraband, * * * such as handcuff keys or straight-edged razors." On direct examination, he testified:

> "Q * * * [Y]ou indicated that you searched [defendant's] wallet for weapons. Have you had occasion to have small items, different kinds of things either used against yourself or knowledge of them being used against other police officers?
>
> "A Yes, I have. I have been threatened with straight-edged razors before. And I know that people, some people carry straight-edged razors in their wallets for different purposes and they can be hazardous to us."

The court made findings consistent with that testimony. It then concluded that the officer's search was justified incident to arrest and denied the motion to suppress.

■    Defendant first asserts that his arrest was unlawful, because the warrant was issued without a sworn statement of probable cause. He relies on *State v. Brown*, 96 Or App 171, 772 P2d 429 (1989), where the district attorney had moved for an order to show cause why Brown's DUII diversion

should not be terminated on the basis of his failure to attend a counseling program. The motion was not supported by an affidavit. A bench warrant issued, and Brown was arrested. We held that Article I, section 9, of the Oregon Constitution requires a warrant to be supported by oath or affirmation. However, we expressly reserved for future decision the issue of

> "whether an oath or affirmation is necessary under Article I, section 9, *when the facts giving rise to probable cause occur in the presence of the court. See Higgins v. Redding,* 34 Or App 1029, 1034, 580 P2d 580, *rev den* 284 Or 80-a (1978)." 96 Or App at 175. (Emphasis supplied.)

This case squarely presents that issue.[1]

■　　　We are unable to find any indication that the drafters of Article I, section 9, or of the Indiana Constitution, which the drafters followed, discussed the oath or affirmation requirement. *See* Carey, *The Oregon Constitution* 28 (1926); *see also* Brown, *Journal of the Convention of the People of Indiana to Amend the Constitution* (Indiana Historical Collections Reprint 1936); Fowler and Brown, *Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana* (Indiana Historical Collections Reprint 1935). The pertinent language of section 9 is identical to the Fourth Amendment, which is "designed to prevent the issue of groundless warrants," *McGrain v. Daugherty,* 273 US 135, 156, 47 S Ct 319, 322, 71 L Ed 580 (1926), by imposing on those who would initiate a process that leads to the deprivation of liberty the solemn obligation to tell the truth regarding facts within their knowledge or belief. That purpose was fulfilled here. The fact of defendant's failure to pay the fine existed in the court's own records. It would be anomalous to conclude that the framers contemplated that a court, acting under the solemn obligation imposed by its oath of office, would be required to affirm by oath or affirmation the validity of its own records. Accordingly, we hold that, when the facts giving rise to probable cause for issuance of a bench warrant exist in the court records, no further oath or affirmation is necessary. The warrant was lawful.

---

[1] The parties stipulated that the trial court that issued the warrant looked at its records and determined that defendant had failed to pay the fine.

Defendant next asserts that the search of his wallet was not lawful as a search incident to arrest. He relies on *State v. Jones,* 103 Or App 316, 797 P2d 385 (1990). The state argues that, under *State v. Smith,* 103 Or App 113, 116, 796 P2d 665 (1990), *rev allowed* 311 Or 87 (1991), the search was justified, because Kerns was concerned that the wallet might contain razor blades or handcuff keys. In *Smith,* we held that an officer is

> "entitled to search an arrestee for *any weapon, tool or implement* that could aid in his escape. The only limitation on that right is that the search must be reasonable in time, scope and intensity in view of all the facts. *State v. Caraher,* [293 Or 741, 759, 653 P2d 942 (1982)]." 103 Or App at 117. (Emphasis supplied; footnote omitted.)

We explained that

> "our holding does not grant an unqualified right to search an arrestee's person incidental to arrest. Rather, it permits an officer to search for items with which an arrestee could escape only (a) when the officer articulates a concern about the possibility of escape and (b) the search is reasonable under all the circumstances." 103 Or App at 117 n 2.

In *State v. Jones, supra,* the officer discovered a small metal box during a search of the defendant incidental to arrest. He shook the box and thought that it contained a razor blade. He opened it and discovered razor blades and controlled substances. We reversed the conviction and said:

> "Even if the officer was justified in removing the box for his own protection or to prevent defendant from escaping, *see State v. Smith,* [*supra*], once it was in his possession, he no longer had reason to believe that it posed a threat to him in either respect. If he thought that it contained a razor blade that could be used as a weapon or a means of escape, he could simply have withheld it from defendant. Because there is nothing to suggest that the box contained evidence of a crime for which defendant was arrested, the opening of the box and inspection of its contents was unlawful." 103 Or App at 319.

Both of those cases are about searches for the protection of the arresting officer incident to arrest. However, *Smith* focuses on different facts than *Jones. Smith* permits a search of a defendant's person for weapons and means of escape. In *Jones,* the officer thought that the contents of the box posed a threat to him before he opened it. We held that,

under the circumstances, he was not entitled to conduct an exploratory search of the contents of the box. We reached a similar conclusion in *State v. Schellhorn,* 95 Or App 297, 769 P2d 221 (1989). In the three cases, we limited the officers to the least intrusive action that was reasonable for their protection. Under *Smith,* Kerns could search defendant's person, because he articulated a concern about the possibility that defendant may have been carrying a weapon or an instrument of escape. The seizure of defendant's wallet as a potential hiding place for razor blades or handcuff keys was reasonable.

■    However, defendant argues that, under *Jones,* even if the seizure was reasonable, once Kerns had the wallet in his possession, it no longer posed a threat to him and, therefore, he was not authorized to search it.[2] The state argues that, under *State v. Mundt/Fincher,* 98 Or App 407, 780 P2d 234, *rev den* 308 Or 660 (1989), a wallet is not a closed container and that to accept defendant's reasoning would require

> "an arresting officer to remove from an arrestee every container that might hold a weapon or escape device and lock it in a patrol car trunk before transporting the prisoner."

The reasonableness of any search under section 9 depends on the circumstances of each case. *State v. Caraher, supra; see also State v. Ridderbush,* 71 Or App 418, 692 P2d 667 (1984).[3] In both *Jones* and *Schellhorn,* the officer was

---

[2] At oral argument, defendant argued that, under *State v. Roque-Escamilla,* 106 Or App 270, 806 P2d 1173, *rev den* 311 Or 427 (1991), Kerns was not entitled to search the wallet, because he did not have a particularized suspicion that the wallet contained weapons or instruments of escape. That case follows *Smith* and stands for the proposition that, unless a police officer has "some reasonable basis" to believe that a wallet contains a weapon (or means of escape), a search of it is unlawful. 106 Or App at 275. Here, Kerns' experiences with being threatened with razor blades and his knowledge that arrestees often carry razors for various purposes is a "reasonable basis" to justify the search of defendant's wallet.

[3] In *Ridderbush,* the arresting officer took the defendant into custody for menacing. During a search incident to arrest, he found a small black box. The officer was aware of a previous report that the defendant was carrying a razor blade. The officer asked defendant about the contents of the box and was told that it contained "pencils." The officer did not believe the defendant, because the box was heavier than what he thought it would be if it only contained pencils. Inexplicably, the officer returned the box to the defendant's pocket. The razors in the box were discovered later during an inventory. We said:

> "Had [the arresting officer] instead opened the box on removing it from defendant's pocket, the search would have been proper under *Caraher* as a measure to protect his safety * * *." 103 Or App at 422.

able to ascertain that the seized article posed a threat to him *before* he opened it. Therefore, a search of the article for the officer's protection was not necessary. Here, Kerns did not know whether the wallet contained weapons or some means of escape before he opened it. Having lawfully seized it from defendant's person, it was reasonable to search it for weapons or means of escape before deciding whether to return it or retain it.

We need not address defendant's remaining assignments.

Affirmed.

**RIGGS, J.,** specially concurring.

I concur; however, I believe that there is another and, perhaps, better answer to defendant's argument that, once the wallet was seized, it was no longer a threat and therefore the officer was not authorized to search it for weapons.

The Oregon constitutional provisions against unreasonable searches and seizures protect privacy and possessory interests from unreasonable government intrusions. Or Const, Art I, § 9; *State v. Ainsworth,* 310 Or 613, 801 P2d 749 (1990). I believe that there are heightened privacy and property interests in wallets, because they are used to carry valuables and important personal papers and effects. Under the circumstances of this case, and in the light of those heightened interests, it would be a greater impairment of defendant's rights to seize the wallet and deprive him of its possession for an indefinite period of time, rather than to inspect it briefly for weapons or means of escape and then return it to him promptly, if none were found.

I would hold that the search of defendant's wallet was the least intrusive reasonable action that was necessary for the officer's protection.