Argued and submitted February 27, 1991, reversed and remanded for new trial January 8, reconsideration denied April 29, petition for review pending 1992

STATE OF OREGON,
*Respondent,*

*v.*

WILFREDO RODRIGUEZ,
*Appellant.*

(C89-01-30382; CA A62825)

823 P2d 1026

Ingrid A. MacFarlane, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender, Salem.

Harrison Latto, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

Rossman, J., dissenting.

## DE MUNIZ, J.

Defendant appeals his convictions on two counts of being an ex-convict in possession of a firearm. ORS 166.270. He assigns as error the trial court's denial of his motion to suppress evidence seized during a warrantless search of his residence. We conclude that defendant's consent to the search was obtained by exploitation of illegal police conduct, and we reverse.

The facts are undisputed. Defendant was subject to deportation, because he was an alien who had been convicted of possession of a controlled substance.[1] United States Immigration and Naturalization Service (INS) Agent Valladolid obtained an administrative warrant for defendant's arrest.[2] Valladolid assembled members of a "regional crime narcotics task force," including six Portland police officers and an FBI agent, to accompany him to defendant's residence. Valladolid knocked on the door, and defendant opened it. Valladolid showed defendant his identification and the arrest warrant. Speaking in Spanish, he identified himself and told defendant that he had an arrest warrant and that defendant was under arrest. Defendant said, "Okay," and stepped back, which

---

[1] 8 USC § 1251 provides, in part:

"Any alien * * * shall, upon the order of the Attorney General, be deported if the alien is deportable as being within one or more of the following classes of aliens:

"* * * * *

"(11) * * * has been convicted of a violation of, or a conspiracy or attempt to violate, any law or regulation of a State * * * relating to a controlled substance * * *."

[2] The Immigration and Nationality Act, 8 USC § 1101-1557, and the regulations pursuant to the act provide for the arrest of deportable aliens. The act provides:

"Pending a determination of deportability in the case of any alien * * *, such alien may, upon warrant of the Attorney General, be arrested and taken into custody." 8 USC § 1252.

The federal regulations provide that an administrative warrant for the arrest of a deportable alien may be issued by a:

"(i) District director;

"(ii) Acting district director;

"(iii) Deputy district director;

"(iv) Assistant district director for investigations * * *." 8 CFR § 242.2(c)(1).

Neither the act, nor the regulations require an administrative arrest warrant to be supported by oath or affirmation.

Valladolid interpreted as an invitation to enter. Valladolid stepped in and read defendant the *Miranda* warnings in Spanish. Defendant said that he understood his rights. Valladolid asked, "Do you have any drugs or guns in the house?" Defendant responded, "No, go ahead and look." Valladolid asked whether they could search, and defendant said, "Yes, go ahead."

Valladolid and the other officers searched the house. The FBI agent found a 9 mm pistol under defendant's pillow. A Portland police officer found a .25 caliber pistol in his closet. In response to questioning, defendant said that the 9 mm pistol was his. He said that, although the .25 caliber pistol did not belong to him, his fingerprints would be found on it. Defendant moved to suppress his statements and the pistols that were seized during the search. The trial court denied the motion.

Defendant does not argue on appeal that any of his statements should have been suppressed. Instead, he contends that the arrest warrant was invalid under the Fourth Amendment, and under Article I, section 9, of the Oregon Constitution, "because it was unsupported by oath or affirmation." He argues that the state failed to prove that his consent to the search was valid and that the pistols should have been suppressed. He also argues that the pistol found by the Portland police officer should have been suppressed, because the police officers lacked authority to assist in an administrative deportation arrest.

The state concedes that the administrative warrant was not supported by oath or affirmation, but argues that the warrant did not require an oath or affirmation. Alternatively, the state argues that the requirement was sufficiently satisfied, because Valladolid presented a certified copy of defendant's conviction to the INS assistant director, who issued the warrant. The state also argues that Valladolid could have arrested defendant without a warrant and that, even if the arrest was invalid, defendant's consent to the search was valid.

The threshold issue is whether an administrative warrant, issued without a supporting oath or affirmation, is constitutionally valid. The United States Supreme Court has

never expressly determined the constitutionality of administrative deportation warrants. *See Abel v. United States*, 362 US 217, 233, 80 S Ct 683, 4 L Ed 2d 668 (1960). However, the Court noted that:

"Statutes authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time." 362 US at 230.

Additionally, the Court observed that it had often upheld deportation proceedings that were initiated pursuant to administrative arrest warrants. 362 US at 233-34.

■■ An administrative warrant may be lawful for deportation purposes. However, state rules of evidence control the admissibility of evidence in state courts. *See Ker v. California*, 374 US 23, 31, 83 S Ct 1623, 10 L Ed 2d 726 (1963). The Oregon Constitution dictates that

"all citizens, including criminal defendants, have constitutional rights, and the state may not prove, over objection, any crime with unconstitutionally obtained evidence." *State v. Isom*, 306 Or 587, 595, 761 P2d 524 (1988).

State constitutional protections deserve at least as much respect as the Oregon Rules of Evidence. For the purpose of prosecuting state offenses in state courts, the validity of an arrest is measured by state standards.

■ ■ Defendant does not argue that ORS 133.245(1)[3] controls this case. Instead, he argues that Article I, section 9, invalidates an administrative arrest warrant that is not supported by oath or affirmation. We recently said that,

"By its express language, Article I, section 9, does not limit its application. It states that '*no* warrant shall issue, but upon probable cause, supported by oath, or affirmation.' " *State v. Brown*, 96 Or App 171, 175, 772 P2d 429 (1989). (Emphasis in original.)

---

[3] ORS 133.245(1) provides:

"A federal officer may arrest a person [for] any crime committed in the federal officer's presence if the federal officer has probable cause to believe the arrested person committed the crime [or] the federal officer has received positive information * * * that a peace officer holds a warrant for the person's arrest."

We recognized that

> "The guarantee of Article I, section 9, that no individual's liberty be deprived by a warrant unless supported by oath or affirmation would be frustrated if a court could issue a warrant unsupported by a sworn statement * * *." 96 Or App at 175.

It makes no difference that a court did not issue the arrest warrant, that the warrant was an "administrative" warrant or that defendant was arrested by a federal agent. Agent Valladolid deprived defendant of his liberty by arresting him. "No" still means "no." For the purpose of state prosecutions in state court, an arrest warrant is invalid if it is not supported by oath or affirmation.[4] The oath or affirmation must be presented to a neutral and detached magistrate. Accordingly, we reject the state's contention that a certified copy of defendant's prior conviction satisfied the oath or affirmation requirement in this case.

■ ■   Next, we address the issue of whether Valladolid could have arrested defendant without a warrant. Defendant does not deny that Valladolid had probable cause to arrest him for deportation. However, defendant was in his home when Valladolid came calling. In the absence of exigent circumstances, police may not make a nonconsensual entry into a person's home to arrest a person without a valid warrant. *State v. Olson*, 287 Or 157, 165, 598 P2d 670 (1979). The state's reliance on *United States v. Santana*, 427 US 38, 96 S Ct 2406, 49 L Ed 2d 300 (1976) is misplaced. The defendant in *Santana* was "standing directly in the [open] doorway" when police spotted her. 427 US at 40 n 1. The Court held that she was in a public place,

> "not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." 427 US at 42.

The state contends that

> "[t]he only difference here is that defendant was presumably just behind the doorway, rather than directly in it, when he

---

[4] This conclusion is not inconsistent with our decision in *State v. Noble*, 109 Or App 46, 818 P2d 938, *rev allowed* 312 Or 527 (1991). A separate sworn statement is unnecessary if the facts giving rise to probable cause are within the personal knowledge of the court. The oath or affirmation requirement is satisfied by the court's oath of office. 109 Or App at 49.

answered the door and * * * the only 'entry' into defendant's premises * * * consisted of the sound waves from Agent Valladolid's voice, informing defendant that he was under arrest."

The state posits that the fact that defendant was only "one step within his doorway" is not significantly different from the circumstances in *Santana*. This argument ignores the fact that defendant was in his home, behind a closed door, when Valladolid knocked. He was not holding himself out to public scrutiny and would not have come within a step of the threshold, but for the knock at the door. Without an arrest warrant that was valid under the Oregon Constitution, defendant's arrest was unlawful.

■■     Immediately after the unlawful arrest, defendant consented to a search of his residence. Illegal police conduct does not necessarily invalidate a consent to search. *Wong Sun v. United States*, 371 US 471, 488, 83 S Ct 407, 9 L Ed 2d 441 (1963); *State v. Kennedy*, 290 Or 493, 500, 624 P2d 99 (1981). When the consent to search follows unlawful police conduct, the evidence must be suppressed only if it is found that "the consent was gained by exploitation of the illegality or that defendant's free will was tainted by the illegal police conduct." The record is devoid of any indication that, when the administrative warrant was issued, any law enforcement agent had even a reasonable suspicion that defendant had committed any crime or that defendant's residence contained evidence of a crime. Nevertheless, Valladolid assembled members from a "regional crime narcotics task force" to execute the arrest. He read defendant his rights from a form supplied by the Drug Enforcement Agency. After advising defendant of his rights, Valladolid asked him, "Do you have any drugs or guns in the house?"

ORS 181.850 forbids local law enforcement personnel from participating in the arrest of a person "whose only violation of law is that [he is] residing in the United States in violation of federal immigration laws." In the light of ORS 181.850, Valladolid's sole purpose in bringing members of the "regional crime narcotics task force" together could only have been to have them look for evidence of violations of state narcotics laws. In fact, the trial court found that "they were looking for violations of the state statutes." That finding

compels the conclusion that Valladolid sought to utilize the administrative warrant for purposes beyond accomplishing defendant's deportation — he sought to use it to gain access to defendant's home to search for evidence of crimes.

The administrative arrest warrant may have been lawful for the purpose of seizing defendant for deportation. However, once defendant acquiesced to the arrest, Valladolid's mission to arrest him as a deportable alien was complete. Defendant was cooperative. Valladolid expressed no articulable concern for his safety,[5] so no search or further inquiry was necessary. Nonetheless, Valladolid asked defendant, "Do you have any drugs or guns in the house?" That unwarranted query was simply an inseparable link in the chain of unlawful events that began when Valladolid invited the narcotics task force to accompany him on a deportation case. Defendant's consent to the search was obtained by exploitation of illegal police conduct. His motion to suppress the pistols should have been granted.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

I disagree only with the majority's conclusion that defendant's consent to the search of his house was obtained by exploitation of illegal police conduct, because I believe that it does not reflect the teachings of *State v. Kennedy*, 290 Or 493, 624 P2d 99 (1981). Because the majority's incorrect definition of "exploitation" is determinative of the outcome of this case, I dissent.

Defendant invited the search without any request for consent from Valladolid. After defendant said, "Go ahead and look," Valladolid asked, "Can we search?" Apparently, Valladolid was cautiously insuring that defendant's invitation was genuinely voluntary. The majority acknowledges that defendant's consent to the search was voluntary.

---

[5] We do not hold that a search incident to arrest on an administrative warrant would be impermissible. However, if evidence obtained during such a search is to be used in a state prosecution, then the Oregon Constitution circumscribes the permissible scope of the search. *See State v. Caraher*, 293 Or 741, 759, 653 P2d 942 (1982); *State v. Boyd*, 101 Or App 649, 652, 792 P2d 462 (1990).

In my view, the determination that the consent was voluntary ends our inquiry. In *State v. Jacobus*, 106 Or App 496, 499, 809 P2d 108 (1991), we explained the holding of *State v. Kennedy*:

> "*The court rejected the concept* that, because the unlawful police conduct put the defendant in a position so that his consent could be requested and obtained, consent was therefore invalid." (Emphasis supplied.)

The problem with the majority's conclusion is that it appears to apply a "but for" test to determine if evidence is illegally seized. That is, but for Valladolid's presence in defendant's home as a result of his improper use of an administrative warrant, defendant would not have been in a position to consent. The majority ignores the significance of defendant's voluntary consent and apparently defines "exploitation" as the circumstances under which the officer came to be present to receive defendant's consent. However, *Kennedy* specifically rejected the "but for" test. The proper inquiry is, instead, whether there were circumstances that might have *coerced* defendant to give his consent.

In *State v. Williamson*, 307 Or 621, 772 P2d 404 (1989), police had stopped the defendant by means of an unlawful roadblock. When the defendant refused to give his consent to search his truck, the police threatened him with indefinite detention of his truck while the officers obtained a search warrant. The defendant then "decided" to consent, because he felt that he had no other reasonable choice. The court distinguished *Kennedy*, in which the defendant's consent had been voluntary, because the facts of *Williamson* clearly indicated coercion. The court explained:

> "We do not hold that consent can never legitimize a search when the occasion to give or refuse consent followed some unauthorized act of the police. We hold only that a search is not legitimized by consent obtained under the pressure of police action that became available to police only by the prior unauthorized conduct." 307 Or at 626.

Similarly, we should distinguish the present case, in which there is no dispute but that defendant's consent to search his house was voluntary. Neither does there appear to be a disagreement that defendant could have refused to give his

consent. Accordingly, the officer was justified in seizing the firearms, and the trial court properly denied defendant's motion to suppress.