Argued and submitted November 1, decision of the Court of Appeals affirmed on different grounds; judgment of the circuit court affirmed December 30, 1993, reconsideration denied February 8, 1994

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## STANLEY EDWARD JACOBUS,
*Petitioner on Review.*

## (CC C88-10-38136; CA A61294; SC S38216)

864 P2d 861

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petitions was Sally L. Avera, Public Defender.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response to the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GRABER, J.

## GRABER, J.

Defendant was charged with unlawful possession of a controlled substance, ORS 475.992. Before trial, he moved to suppress the state's evidence on the ground that he had been stopped and searched unlawfully. The trial court denied the motion. Thereafter, the trial court found defendant guilty and entered a judgment of conviction. On defendant's appeal, the Court of Appeals affirmed. *State v. Jacobus*, 106 Or App 496, 809 P2d 108 (1991). We allowed defendant's petition for review and also affirm, but on different grounds.

We summarize the facts from uncontradicted testimony. About 9 p.m. on October 5, 1988, Portland police received a call from an employee of a convenience store. The employee told the police that a customer had informed the employee that the customer had overheard the occupants of an orange Datsun parked nearby say that "there was only one clerk in the store." The police dispatched an officer in a police car to the store.

On approaching the convenience store, the police officer saw an orange Datsun parked in an unlighted area that was near the store, but not visible from the store. The officer observed that the Datsun had three occupants, two males and a female. As the officer drove past the Datsun, he saw the occupants begin to "move around the vehicle quite frantically" and to "frantically stuff something under the vehicle seats." The officer made a U-turn, pulled in behind the Datsun, and turned on his revolving overhead lights. Two of the occupants, the female and one of the males, got out of the Datsun and walked past the officer's car toward the store. The officer got out of his car and approached the Datsun on foot. As he did so, he observed the second male, defendant, "stuffing stuff down on the floorboard of the vehicle under some coats and stuff." The officer asked defendant to step out of the Datsun. After "at least three" such requests, defendant complied.

After a short interval during which the police officer left defendant under the supervision of another officer while he checked the interior of the store, the first officer asked defendant "whose coat it was he was concealing stuff in." Defendant replied that it was his. The officer asked defendant

for identification, which defendant claimed not to have. The officer then asked defendant if defendant "minded if [the officer] looked through the coat." Defendant replied, "Go ahead." The officer reached into the car and picked up the coat. Patting the outside of the coat, the officer felt "what appeared to be a wallet" in one pocket of the coat and "a small container of some kind approximately one inch in diameter" in another pocket. As the officer pulled the coat out of the car, the small container fell out of the pocket.

The officer asked defendant what the container was. Defendant replied that he did not know. The officer asked defendant "if he minded if [the officer] looked through it." Defendant again replied, "Go ahead." On opening the container, the officer discovered heroin. He arrested defendant.

At trial, defendant moved to suppress evidence of the contents of the container, on the grounds that the stop and the search were unlawful. The trial court denied the motion. Defendant was tried to the court on stipulated facts and was convicted.

Defendant appealed, arguing that the trial court erred in denying his motion to suppress, because the police officer lacked "reasonable suspicion" to "stop" defendant, as required by ORS 131.615(1), set out below, and because, even if the stop was based on reasonable suspicion, defendant's consent to search his coat was not voluntary. The state conceded that the officer stopped defendant. It argued, however, that the stop was lawful, because the officer had reasonable suspicion of criminal activity. Alternatively, the state argued that, even if the stop was not lawful, defendant's consent to search his coat was voluntary, because the officer did not "exploit" the illegality of the stop to discover the heroin and because the illegality did not affect defendant's "state of mind" or otherwise "taint" or "coerce" defendant's consent.

The Court of Appeals assumed, without deciding, that the stop in this case was unlawful under ORS 131.615. *State v. Jacobus, supra*, 106 Or App at 502. The court explained that, under *State v. Kennedy*, 290 Or 493, 624 P2d 99 (1981), the occurrence of an unlawful stop does not necessarily require suppression of evidence obtained following the

stop; that is, this court does not apply a "but for" test to determine whether the evidence was seized legally. *Id.* at 499. The Court of Appeals stated that, when a search is based on the consent of a defendant after unlawful police conduct, the test for determining whether evidence obtained is admissible is "whether, under all the circumstances, including the facts of the unlawful conduct, the consent is a product of the defendant's free will" and that, when consent occurs after an unlawful stop, the burden on the state to show voluntariness is "greater" than when no illegality has occurred. *Ibid.* Comparing the circumstances in this case with the facts in other cases from this court in which a defendant consented to a search following illegal police conduct, the Court of Appeals concluded that defendant's consent to the "pat down" of the coat and to the search of the container was voluntary, "even under the stricter standard of review applicable when illegal police conduct precedes the consent." *Ibid.* The court affirmed defendant's conviction.

Judge Warren dissented. Although he agreed with the majority that "every stop involves some coercion," he disagreed that "police may exploit the coerciveness to gain consent when they do not have any reasonable suspicion to support the stop." *Id.* at 503 (Warren, J., dissenting). Citing *State v. Williamson*, 307 Or 621, 772 P2d 404 (1989), Judge Warren stated that consent after an unlawful stop "may be voluntary when the state proves that the consent did not flow from the coerciveness of the situation," such as when the state shows that the police informed the defendant of the right to refuse consent or when the defendant volunteered consent. *Id.* at 503-04. Judge Warren stated that, because no such evidence was presented here, the state had not met its burden of proving that defendant's consent was not the product of an illegal stop. *Id.* at 504.

■ On review, defendant repeats the arguments made in the Court of Appeals. We begin by considering whether the "stop" of defendant was lawful under ORS 131.615. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (court examines statutory issues before reaching constitutional claims).

ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after

informing the person that the peace officer is a peace officer, make a reasonable inquiry."

This court's cases suggest that a two-step analysis is appropriate for determining whether a challenged stop was lawful under ORS 131.615. We first determine when, if ever, the police officer "stopped" the defendant. "As used in ORS 131.615(1), a 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place. ORS 131.605(5)." *State v. Ehly*, 317 Or 66, 76, 854 P2d 421 (1993).[1] *See State v. Painter*, 296 Or 422, 424-26, 676 P2d 309 (1984) (before determining whether a stop was authorized under ORS 131.615, court determines "the point at which a police-citizen encounter becomes a stop" within the meaning of that statute). If a stop occurred, we then determine whether the facts known at the time of the stop, combined with the inferences that the police officer reasonably drew from those facts, were sufficient to give rise to "reasonable suspicion" by the officer that "criminal activity was afoot." *State v. Lichty*, 313 Or 579, 584, 835 P2d 904 (1992).

In *State v. Ehly, supra*, 317 Or at 76, this court defined "reasonable suspicion":

"As used in ORS 131.615(1), 'reasonably suspects' means that a peace officer 'holds a belief that is reasonable under the totality of the circumstances existing at the time and place the officer acts.' ORS 131.605(4). *See State v. Lichty*, 313 Or 579, 584, 835 P2d 904 (1992) (discussing standard for reasonable suspicion to make a stop)."

In *State v. Lichty, supra*, the proprietor of a grocery store found a wallet in his store. When the proprietor opened the wallet to determine its owner, a plastic bag containing white powder fell out. The proprietor gave the wallet to a nearby police officer, stating that it contained cocaine. A moment later, the defendant's companion approached the officer and yelled, "[T]hat's our wallet." In holding that the officer had reasonable suspicion under ORS 131.615 to stop the defendant, this court explained:

---

[1] Citing *State v. Kennedy*, 290 Or 493, 497, 624 P2d 99 (1981), the *Ehly* court noted that the "analysis of a defendant's rights under ORS 131.605 to 131.625 is substantially the same as the analysis of rights under Article I, section 9, of the Oregon Constitution." *State v. Ehly, supra*, 317 Or at 76 n 8.

> "It is clear that 'the statutory standard for the stopping and questioning of a person concerning his possible criminal activity was intended to be less than the standard for probable cause to arrest.' *State v. Valdez*, 277 Or 621, 628, 561 P2d 1006 (1977). The standard is reasonable suspicion, an 'objective test of observable facts.' *Id.* at 629; *State v. Tucker*, 286 Or 485, 495, 595 P2d 1364 (1979). If a police officer 'is able to point to specific and articulable facts which give rise to the inference that criminal activity is afoot, the officer has "reasonable suspicion" and hence can stop the individual for investigation.' *State v. Valdez, supra*, 277 Or at 626 (quoting the Commentaries from the Commission of the Proposed Oregon Criminal Procedure Code of 1972, which drafted ORS 131.615)." *Id.* at 584 (footnote omitted).

This court concluded that the statement by the store's proprietor, although couched in terms of her conclusion regarding the white powder, combined with the police officer's expertise about the way drugs are carried and the defendant's own statement about the wallet, constituted "specific and articulable facts" supporting the officer's "reasonable inference that criminal activity was afoot." *Id.* at 584-85. The court held that, as a result, the requirements of ORS 131.615(1) were met. *Id.* at 585.

■    After hearing testimony on defendant's motion to suppress in the present case, the trial court made findings of fact that were consistent with the uncontradicted evidence summarized above. The trial court concluded:

> "I find that the circumstances at that time gave the officer grounds for reasonable suspicion. That was reasonable under the totality of the circumstances that a crime was being or had been committed."

Appellate courts are bound by the trial court's findings of historical fact that are supported by evidence, but not by the trial court's legal conclusions. *State v. Herbert*, 302 Or 237, 241, 729 P2d 547 (1986); *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968).

■    We first conclude that the officer "stopped" defendant within the meaning of ORS 131.615(1) when he ordered defendant out of the car. At that moment, defendant's liberty — to remain in the Datsun or even, as the other occupants

had done without opposition by the officer, to get out of the Datsun and walk away — was temporarily restrained.

Second, we conclude that, under the totality of the circumstances that existed up to that moment, the police officer was entitled reasonably to infer that "criminal activity was afoot." *See State v. Lichty, supra,* 313 Or at 584 (stating standard). At the time of the stop, the officer knew that a customer had reported to the store clerk that the occupants of an orange Datsun had said that "there was only one clerk in the store"; when the officer arrived, he saw the described vehicle parked in a dark area near, but not visible from, the store; he saw the occupants move "frantically" to "stuff something under the vehicle seats"; two of the three occupants of the Datsun left when they saw the police car approach; and the third occupant placed something on the floorboard of the Datsun under some coats. The state suggests, and we agree, that crimes the police officer might reasonably have suspected defendant of having committed included conspiracy, ORS 161.450, to commit robbery or theft,[2] or an attempt, ORS 161.405, to commit robbery or theft.[3] Because the officer had a "reasonable suspicion" that defendant had committed a crime, the stop met the requirements of ORS 131.615(1).

We next consider whether defendant's consent to the search of his possessions during that stop was valid. We begin with defendant's argument that the search in this case violated his rights under Article I, section 9, of the Oregon Constitution. *See State v. Kennedy, supra* (court considers state constitutional claim before considering federal constitutional claim).

Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon

---

[2] *See State v. Cornell,* 314 Or 673, 678-81, 842 P2d 394 (1992) (discussing elements of criminal conspiracy).

[3] *See State v. Walters,* 311 Or 80, 84-86, 804 P2d 1164 (1991) (discussing the meaning of "attempt" and the sufficiency of evidence to prove an attempt under ORS 161.405).

probable cause, supported by oath, or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

In *State v. Paulson*, 313 Or 346, 351-52, 833 P2d 1278 (1992), this court explained:

"Normally, in order for a search to be constitutionally permissible, the police must have a search warrant. *State v. Campbell*, 306 Or 157, 163, 759 P2d 1040 (1988). In the present case, the police did not have a search warrant when they entered [the] defendants' apartment. The evidence, however, is not to be suppressed automatically on that ground. Evidence is not suppressed unless the search was 'unreasonable' under Article I, section 9, of the Oregon Constitution.

"A warrantless search by the police is 'reasonable' under Article I, section 9, when the search falls within one or another of the recognized exceptions to the warrant requirement. *State v. Miller*, 300 Or 203, 225, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986). One such exception is *consent*. 'When there is consent to a search, no warrant is necessary.' *State v. Pogue*, 243 Or 163, 164, 412 P2d 28 (1966). Under the consent exception to the warrant requirement, the state must prove by a preponderance of the evidence that someone having the authority to do so voluntarily gave the police consent to search the defendant's person or property. *State v. Stevens*, 311 Or 119, 136-37, 806 P2d 92 (1991)." (Emphasis in original; some citations omitted.)

At the hearing in this case on defendant's motion to suppress evidence of the contents of the container, the trial court made the following findings of fact related to the issue of consent:

"After returning from checking the store, the officer went to the car and asked the defendant if — asked the defendant whose coat it was, and he said it was his. There was no identification. The defendant had no identification. [The police officer] asked the defendant to look in the coat [*sic*], and the defendant said, yes. The officer felt the wallet and then another small container of something. He handed the coat to defendant and, as he handed it, the container fell out, which later — then he asked the defendant what the container was, and the defendant said he did not know. He asked the defendant for permission to look into the container. The

defendant subsequently said yes, and subsequently a controlled substance, or an alleged controlled substance was found inside."

The trial court concluded:

"I have some questions as far as the consent, but based on the evidence I've heard, I'm finding that there was consent, and the Motion to Suppress, then, will be denied."

In reviewing the voluntariness of a defendant's consent to search, this court will not disturb the trial court's findings of historical fact if evidence supports them; this court is not, however, bound by the trial court's ultimate holding as to voluntariness, but "assesses anew whether the facts suffice to meet constitutional standards." *State v. Stevens, supra*, 311 Or at 135; *see also State v. Warner*, 284 Or 147, 156-58, 585 P2d 681 (1978) (whether findings of historical fact made by the trial court are sufficient to support the trial court's conclusion that a person voluntarily consented to a search is a question of law for the appellate courts).

We summarize the circumstances under which the police obtained defendant's consent in this case. When defendant gave consent to search his possessions, there were two officers present; neither had displayed a weapon. One of the officers "asked" defendant whether he could "look in" defendant's coat and "look into" the container. Defendant answered both questions in the affirmative. The officer did not use force or threat of force, made no promises, and used no other forms of coercion in obtaining that consent.

We conclude that those circumstances, in their totality, support the trial court's conclusion that defendant voluntarily consented to the search of his possessions. There is nothing in the record in this case to indicate that the police "intimidated or coerced [defendant] in any way" or that there were any circumstances present that might "impair [defendant's] capacity to make a knowing, voluntary, and intelligent choice." *See State v. Stevens, supra*, 311 Or at 134-36 (applying those factors in holding that there was evidence to support the trial court's conclusion that a defendant voluntarily consented to a search). Because defendant voluntarily consented to the search, that search did not violate Article I, section 9.

Neither did the search violate defendant's rights under the Fourth Amendment to the Constitution of the United States. The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[4]

Under the Fourth Amendment,

"a search conducted without a warrant issued upon probable cause is *'per se* unreasonable * * * subject only to a few specifically established and well-delineated exceptions.' *Katz v. United States*, 389 US 347, 357, [88 S Ct 507, 19 L Ed 2d 576 (1968)]. It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 US 218, 219, 93 S Ct 2041, 36 L Ed 2d 854 (1973) (some citations omitted).

The state has the burden of proving that

"the consent was in fact voluntarily given, and [was] not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances * * *." *Id.* at 248.

We conclude that, considering the totality of the circumstances, defendant's consent in this case was "voluntarily given, and [was] not the result of duress or coercion." *See Schneckloth v. Bustamonte, supra*, 412 US at 248 (stating the quoted test); *see also State v. Flores*, 280 Or 273, 278, 570 P2d 965 (1977) (concluding that, where the police did not use force or threat of force, made no promises, and used no other form of coercion, the defendant's consent was voluntary and that the consented-to search therefore was valid under the Fourth Amendment). Because defendant consented voluntarily to the search of his possessions, that search did not violate the Fourth Amendment to the Constitution of the United States.

---

[4] The Fourth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961).

In summary, the stop of defendant was lawful under ORS 131.615. Defendant voluntarily consented to the search of his possessions; as a result, that search did not violate defendant's rights under Article I, section 9, of the Oregon Constitution or the Fourth Amendment to the Constitution of the United States. The trial court did not err in denying defendant's motion to suppress evidence discovered during that search.

The decision of the Court of Appeals is affirmed on different grounds. The judgment of the circuit court is affirmed.